1  WILLIAM L. STERN (Bar No. 96105)
   WStern@mofo.com
2  CLAUDIA M. VETESI (Bar No. 233485)
   CVetesi@mofo.com
3  KATHLEEN B. RONEY (Bar No. 268446)
   KRoney@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  PURVI G. PATEL (Bar No. 270702)
   PPatel@mofo.com
8  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
9  Los Angeles, California 90017
   Telephone: 213.892.5200
10 Facsimile: 213.892.5454

11 Attorneys for Defendant
   THE HAIN CELESTIAL GROUP, INC.
12

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17

| | |
|---|---|
| 18  ALESSANDRA BALSER and RUTH KRESHA, individually and on behalf of all others similarly situated, | Case No.   CV 13-05604 R (RZx) |
| 19 | **NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE HAIN CELESTIAL GROUP, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE** |
| 20                    Plaintiffs, | |
| 21         v. | |
| 22  THE HAIN CELESTIAL GROUP, INC., | |
| 23                    Defendant. | |
| 24 | Hon. Manuel L. Real |
| 25 | Date:   December 2, 2013 |
| 26 | Time:   10:00 a.m. Courtroom: 8 |

27

28

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE THAT** on December 2, 2013 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Western Division, located at 312 North Spring Street, Los Angeles, CA 90012, before the Honorable Manuel L. Real, defendant The Hain Celestial Group, Inc. ("Hain" or "Defendant") will, and hereby does move, to dismiss the First Amended Complaint ("FAC") of Plaintiffs Alessandra Balser and Ruth Kresha pursuant to (i) Fed. R. Civ. P. 12(b)(6) on the ground that the FAC fails to state a claim upon which relief can be granted, (ii) Fed. R. Civ. P. 9(b) on the ground that claims grounded in fraud are not pled with particularity; and (iii) Fed. R. Civ. P. 12(b)(1) on the ground that Plaintiffs lack standing.  In addition, pursuant to Fed. R. Civ. P. 12(f), Defendant will ask the Court to strike Plaintiffs' class allegations.

      This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and on such other written and oral argument as may be presented to the Court.

Dated:  October 29, 2013          WILLIAM L. STERN
                           CLAUDIA M. VETESI
                           KATHLEEN B. RONEY
                           PURVI PATEL
                           MORRISON & FOERSTER LLP

                        By:  */s/ William L. Stern*
                               William L. Stern

                        Attorneys for Defendant
                        THE HAIN CELESTIAL GROUP, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION....................................................................i

TABLE OF AUTHORITIES ........................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES........................................1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II.     FACTUAL BACKGROUND ........................................................................2

III.    THE LEGAL STANDARD ...........................................................................3

IV.     ARGUMENT ................................................................................................3

    A.      Plaintiffs Fail to State a Plausible Claim. .........................................3

    B.      Plaintiffs Have Not Pled Their Case with the Requisite
        Particularity Required by Rule 9(b).................................................10

    C.      Plaintiffs' Claims Should Be Dismissed Under the
        Primary Jurisdiction Doctrine.........................................................12

    D.      Plaintiffs Lack Standing to Sue over Products They Never
        Purchased. .......................................................................................15

    E.      Plaintiffs Cannot Assert Violations of Other States'
        Consumer Protection Statutes. ........................................................16

    F.      The Court Should Strike Plaintiffs' Class Allegations. ....................19

        1.      Plaintiffs' New Hampshire Class Fails Because
            Hain Does Not Maintain Its Principal Place of
            Business in New Hampshire.....................................................19

        2.      The New Hampshire, Washington, and California
            Classes are Overbroad. ...........................................................20

        3.      The Court Should Strike Plaintiffs' Purported
            "Count V Class" and "Count VI Class." .................................21

V.      CONCLUSION ...........................................................................................21

CERTIFICATE OF SERVICE .............................................................................1

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

4

**CASES**

5

*All One God Faith, Inc. v. Hain Celestial Grp, Inc.*,
  No. C 09-3517 SI,
6
  2012 U.S. Dist. LEXIS 111553 (N.D. Cal. Aug. 8, 2012)................................ 13

7

*Anunziato v. eMachines, Inc.*,
8
  402 F. Supp. 2d 1133 (C.D. Cal. 2005)................................................................4

9

*Ashcroft v. Iqbal*,
10
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..............................3, 4

11

*Astiana v. Hain Celestial Grp., Inc.*,
  905 F. Supp. 2d 1013 (N.D. Cal. 2012)......................................................*passim*
12

13

*Avila v. Vital Pharm.*,
  No. CV 12-03823 JGB,
14
  2013 U.S. Dist. LEXIS 74122 (C.D. Cal. May 21, 2013)...................................3

15

*Banks v. Nissan N. Am., Inc.*,
16
  No. C 11-2022-PJH,
  2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012) ................................ 17
17

18

*Barrows v. Boles*,
  141 N.H. 382, 687 A.2d 979 (1996)....................................................................4
19

20

*Bearden v. Honeywell Int'l, Inc.*,
  No. 3:09-1035,
21
  2010 U.S. Dist. LEXIS 83996 (M.D. Tenn. Aug. 16, 2010) ...................... 19, 21

22

*Bell Atl. Corp. v. Twombly*,
23
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................................4

24

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
25
  637 F.3d 1047 (9th Cir. 2011).......................................................................... 10

26

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996)................................................................................3
27

28

*Callan v. Motorcity, Inc.*,
  No. C11-1340 TSZ,
  2013 U.S. Dist. LEXIS 143455 (W.D. Wash. Oct. 1, 2013) ................................ 4

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  475 F. App'x 113 (9th Cir. 2012) ........................................................................ 4

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10,
  2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012) .................................................. 15

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) .......................................................................... 12

*Cox v. Gruma Corp.*,
  No. 12-CV-6502 YGR,
  2013 U.S. Dist. LEXIS 97207 (N.D. Cal. July 11, 2013) .................................. 13

*Fid. Mortg. Corp. v. Seattle Times Co.*,
  213 F.R.D. 573 (W.D. Wash. 2003) ..................................................................... 3

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ............................................................................ 4, 8

*Frezza v. Google Inc.*,
  No. 5:12-CV-00237-RMW,
  2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ............................................... 17, 18

*Gianino v. Alacer Corp.*,
  846 F. Supp. 2d 1096 (C.D. Cal. 2012) ........................................................ 17, 18

*Granfield v. NVIDIA Corp.*,
  No. C 11–05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ........... 16, 17

*Guketlov v. HomeKey Mortg., LLC*,
  No. C09-1265JLR,
  2009 U.S. Dist. LEXIS 104504 (W.D. Wash. Nov. 9, 2009) .............................. 4

*Gwyn v. Loon Mountain Corp.*,
  No. 01-00214-B, 2002 U.S. Dist. LEXIS 9092 (D.N.H. May 15, 2002),
  *aff'd*, 350 F.3d 212 (1st Cir. 2003) ..................................................................... 3

*Hairston v. S. Beach Bev. Co.*,
  No. 12-cv-01429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .............. 9

*Henderson v. Gruma Corp.*,
    No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ........... 4

*Homchick v. Allstate Ins. Co.*,
    No. C04-5639RJB,
    2005 U.S. Dist. LEXIS 25645 (W.D. Wash. Oct. 19, 2005) ........................... 10

*Hood v. Wholesoy & Co.*,
    No. 12-cv-5550-YGR,
    2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12, 2013) .......................... 12, 13

*In re Apple & AT&TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008)........................................................... 18

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007).......................................................17-18

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) .................................................................... 17

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    No.1:08-WP-65000,
    2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010)............................... 19

*Johns v. Bayer Corp.*,
    No. 09CV1935 DMS (JMA),
    2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ........................... 15, 16

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425-LHK,
    2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013)....................... 6, 8, 11

*Kearns v. Ford Motor Co*.,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................... 3

*Khasin v. R.C. Bigelow, Inc.*,
    No. C 12-02204 JSW,
    2013 U.S. Dist. LEXIS 77084 (N.D. Cal. May 31, 2013) ............................... 16

*Koehler v. Litehouse, Inc.*,
    No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012)............... 17

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011).................................................. 10

*Larsen v. Trader Joe's Co.*,
   No. C 11–05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ................. 16

*Littlehale v. Hain Celestial Grp., Inc.*,
   No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ................... 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ................................ 15

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................16, 17, 18, 21

*Miller v. Ghirardelli Chocolate Co.*,
   No. C 12-04936 LB, 2013 WL 1402682 (N.D. Cal. Apr. 5, 2013) .................. 16

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   No. 2:10–CV–02630 JAM–KJN,
   2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) ................................................... 16

*Mulligan v. Choice Mortg. Corp. USA*,
   No. 98-596-B, 1998 U.S. Dist. LEXIS 13248 (D.N.H. Aug. 11, 1998) ............ 10

*Pelayo v. Nestle USA, Inc.*,
   No. CV 13-5213-JFW, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) ........ 4, 6, 8

*POM Wonderful LLC v. Coca-Cola Co.*,
   679 F.3d 1170 (9th Cir. 2012) .......................................................................... 13

*Reid v. Johnson & Johnson*,
   No. 11cv1310 L (BLM),
   2012 U.S. Dist. LEXIS 133408 (S.D. Cal. Sept. 17, 2012) ................................ 9

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .................................................................................... 18, 19

*Simpson v. Kroger Corp.*,
   219 Cal. App. 4th 1352, 162 Cal. Rptr. 3d 652 (2013) ...................................... 9

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ............................................................................ 12

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) .......................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................ 10

*Viggiano v. Hansen Natural Corp.*,
   No. CV 12-10747 MMM, 2
   013 U.S. Dist. LEXIS 70003 (C.D. Cal. May 13, 2013) ...................... 9

*Wilson v. Frito-Lay N.A., Inc.*,
   No. 12-cv-1586 SC,
   2013 U.S. Dist. LEXIS 153136 (N.D. Cal. July 9, 2013) ................... 16

*Zinser v. Accufix Research Inst., Inc*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................... 17

**STATUTES, REGULATIONS & RULES**

21 U.S.C.
   § 393(b)(2)(D) .................................................................................... 13

21 C.F.R.
   pts. 700-740 ................................................................................... 5, 14
   § 700.3(b) ............................................................................................ 9
   § 700.3(e) ......................................................................................... 6, 9
   § 700.3(k) ......................................................................................... 6, 9

Cal. Bus. & Prof. Code
   § 17200 ................................................................................................ 2

Cal. Civ. Code
   § 1750 *et seq.* .................................................................................... 2

N.H. Rev. Stat. Ann.
   § 358-A:1 *et seq.* ............................................................................... 2
   § 358-A:10-a ...................................................................................... 20

Wash. Rev. Code
   § 19.86.010 *et seq* ............................................................................ 2

58 Fed. Reg. 2302 (Jan. 6, 1993) ..................................................... 5, 14

75 Fed. Reg. 63552 (Oct. 15, 2010) ...................................................... 5

Fed. R. Civ. P.

Rule 9(b) ........................................................................................... 1, 3, 10, 12
Rule 23 ...................................................................................................... 19

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

3        This is a false advertising class action claiming that the "natural" statement

4   on Hain Celestial's Alba Botanica® cosmetics labels is misleading.  Plaintiffs say

5   they were tricked into believing shampoos, lotions, bath gels, and sun care products

6   were "natural" when, in fact, they contain synthetic ingredients.  Ignoring the

7   product labels that explain what "natural" means, and ignoring too the

8   comprehensive ingredient list, they base their claim on the word "natural" that

9   defies definition even to FDA.

10       Plaintiffs' claims fail for six reasons.

11       First, Plaintiffs claim they were duped by a word they cannot define, and

12  which FDA has chosen not to define.  No matter.  The product labels explain what

13  "natural" means and list each ingredient.  No reasonable consumer could have been

14  misled.

15       Second, Plaintiffs have not pled their fraud-based claims with particularity.

16  They fail to allege what they believed "natural" meant—for example, whether it

17  means something different than what the labels state—how the labels were

18  deceptive, or how they relied.  They fail to meet the requirements of Rule 9(b).

19       Third, the primary jurisdiction doctrine bars their claims, as another court

20  recently found in a nearly-identical case.  *See Astiana v. Hain Celestial Grp., Inc.*,

21  905 F. Supp. 2d 1013, 1014-15 (N.D. Cal. 2012).  FDA comprehensively regulates

22  cosmetics labeling and has expressly declined to define the term "natural."

23  Deference to FDA's authority and judgment is necessary.

24       Fourth, Plaintiffs are suing over 27 products they never bought. But they

25  cannot have been injured by products *not* purchased.  They lack Article III standing.

26       Fifth, having bought products in California, New Hampshire, and

27  Washington, Plaintiffs may sue (at most) under those states' laws.  Their claims

28

1  arising under consumer protection statutes of *other* states—like their claims over

2  products they *didn't* buy—fail as a matter of law.

3      <u>Sixth</u>, the Court should strike Plaintiffs' class allegations.  Plaintiffs' alleged

4  classes are overly broad and lack appropriate class representatives.

5      The Court should grant this motion to dismiss and to strike, with prejudice.

## II.   FACTUAL BACKGROUND

7      Plaintiffs seek certification of 5 subclasses of buyers of Alba Botanica[®]

8  products (First Amended Complaint[1] ("FAC") ¶¶ 20-22.)  Ms. Balser seeks to

9  represent a Washington Class and New Hampshire Class, Ms. Kresha seeks to

10  represent a California Class, and both seek to represent two additional classes of

11  purchasers in various additional states.  In short, Plaintiffs claim that Alba

12  Botanica[®]'s "natural" statement on its cosmetics labeling is false and misleading

13  because the products contain "unnatural synthetic ingredients."  (FAC ¶ 16.)

14  Plaintiffs claim they "paid a premium for the Products over comparable [products]

15  that do not purport to be natural."  (FAC ¶¶ 7-8.)

16      Plaintiffs hope to redress these alleged wrongdoings with six causes of

17  action: (i) the "unlawful," "unfair," and "fraudulent" prongs of California's unfair

18  competition law (Cal. Bus. & Prof. Code § 17200) (UCL); (ii) the Consumer Legal

19  Remedies Act (Cal. Civ. Code § 1750 *et seq.*) (CLRA); (iii) the New Hampshire

20  Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*) (NHCPA);

21  (iv) Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010 *et seq.*)

22  (WCPA); (v) various states' consumer protection laws; and (vi) various states'

23  consumer protection laws, including some that do not permit class actions.

24  Plaintiffs pray for compensatory and treble damages, restitution, disgorgement of

25  profits, attorneys' fees, costs, and injunctive relief.  (FAC at 38:9-40:11.)

26

27  _____

[1] The differences between the original Complaint and the FAC are minor.  The FAC

28  added a damages claim under the CLRA and other cosmetic changes.

2

### III.   THE LEGAL STANDARD

A court must accept all factual allegations pleaded in the complaint as true, *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but it need not accept unreasonable inferences or legal conclusions cast in the form of factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[B]are assertions…amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" are not entitled to an assumption of truth) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Because Plaintiffs' claims all sound in fraud, the entire complaint must be pled with particularity under Rule 9(b).  *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125-27 (9th Cir. 2009); *see also Avila v. Vital Pharm.*, No. CV 12-03823 JGB (SHx), 2013 U.S. Dist. LEXIS 74122, at *6 (C.D. Cal. May 21, 2013); *Fid. Mortg. Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (WCPA claim based of fraudulent conduct must meet Rule 9(b) standards); *Gwyn v. Loon Mountain Corp.*, No. 01-00214-B, 2002 U.S. Dist. LEXIS 9092, at *24-25 (D.N.H. May 15, 2002) (Rule 9(b) applies to NHCPA claim grounded in fraud), *aff'd*, 350 F.3d 212 (1st Cir. 2003).

### IV.   ARGUMENT

#### A.   Plaintiffs Fail to State a Plausible Claim.

Plaintiffs claim that various Alba Botanica® products stating "natural" on their front labels were not actually "natural."  Yet they admit that "FDA has not defined the term 'natural' in the context of cosmetics" and that through its product labels and website, Hain explains what "natural" is meant to convey to consumers. (FAC ¶¶ 1 n.1, 14-15.)  Their claims are implausible.

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Twombly*, 550 U.S. at 570.  Moreover, statements are only actionable if they are likely to deceive a reasonable consumer. *See Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)) (reasonable consumer standard applies to the UCL and CLRA).[2]  "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213-JFW (AJWx), 2013 WL 5764644, at *3 (C.D. Cal. Oct. 25, 2013) (dismissing claims with prejudice). Plaintiffs' claims fail.

First, there is no objective meaning of "natural" in the context of cosmetics, and, as such, the word could not have misled consumers.  *See Astiana*, 905 F. Supp. 2d at 1016 ("the FDA cosmetics regulations are silent as to when, if ever, the use of the word 'natural' is false or misleading").  "Generalized, vague, and unspecified assertions constitute [statements] upon which a reasonable consumer could not rely and hence are not actionable."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (dismissing claims under California law); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("original" and "classic" are subjective, non-actionable statements); *Callan v. Motorcity, Inc.*, No. C11-1340 TSZ, 2013 U.S. Dist. LEXIS 143455, at *18 (W.D. Wash. Oct. 1, 2013) (finding "vague" statements non-actionable).  Plaintiffs admit the term

---

[2] The standard under Washington and New Hampshire law is even more stringent. *See Guketlov v. HomeKey Mortg., LLC*, No. C09-1265JLR, 2009 U.S. Dist. LEXIS 104504, at *8-9 (W.D. Wash. Nov. 9, 2009) (WCPA requires showing that deceptive conduct "had the capacity to deceive a *substantial portion* of the public" and affects the public interest) (emphasis added); *Barrows v. Boles*, 141 N.H. 382, 390, 687 A.2d 979, 986 (1996) ("objectionable conduct [under NHCPA] must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce") (citation and quotations omitted).

1  "natural" is vague and that even FDA has declined to define the word as it relates to

2  cosmetics.  (FAC ¶ 1 n.1.)

3       Cosmetics labeling is governed by the Food, Drug and Cosmetic Act (FDCA)

4  and extensive FDA regulations codified in 21 C.F.R. pts. 700-740.  The regulations

5  provide detailed labeling requirements, including a mandated ingredient list that

6  declares ingredients in descending order of predominance.  "The level of detail

7  provided in these regulations shows that the area of cosmetics labeling is indeed

8  comprehensively regulated by the FDA."  *Astiana*, 905 F. Supp. 2d at 1016.

9  Notwithstanding these thorough regulations, the agency has declined to define

10  "natural," refusing to force an objective definition onto a subjective term.

11       Even in the context of food labeling, where FDA has issued an informal

12  "natural" policy, it has stated that it lacks "specific direction to follow for

13  developing a definition regarding the use of the term 'natural'" and that consumers,

14  experts, and scientists "provided a wide range of ideas" regarding potential

15  definitions.  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).  For cosmetics, FDA decided

16  not even to offer informal guidelines.  The Federal Trade Commission agrees.   It

17  also declined to define "natural" because the term "may be used in numerous

18  contexts and may convey different meanings depending on that context."  75 Fed.

19  Reg. 63552, 63586 (Oct. 15, 2010). Thus, neither binding regulations nor informal

20  guidance exists as to when the term "natural" may be used on cosmetics and what it

21  means.

22       In the face of FDA's sanctioned subjectivity surrounding the term "natural"

23  on cosmetics labeling, Plaintiffs do not (and cannot) allege an objective definition.

24  They cite the Merriam-Webster Dictionary in a footnote to say "natural" means

25  "existing in or produced by nature: not artificial."  (FAC ¶ 1 n.1.)  But Plaintiffs

26  never say they believed this definition applied to the products they bought.  In fact,

27  the definition makes no sense in the context of cosmetics.  Cosmetics, by definition,

28  are "manufactured" products composed by mixing "chemical" ingredients through

1   "chemical, physical, biological, or other procedures."  21 C.F.R. § 700.3(e), (k).

2   Shampoo and lotion do not exist in nature.  And Plaintiffs do not allege they

3   believed the products were actually "existing in or produced by nature."  *See*

4   *Pelayo*, 2013 WL 5764644, at *4 (finding dictionary definition of "natural" "clearly

5   does not apply" to pasta because it is a product manufactured in mass, and

6   reasonable consumers understand that it does not "spring[] fully-formed from

7   Ravioli trees").  The instant case is even clearer.  While food *might* exist in nature,

8   cosmetics, by definition, cannot.  There are no "Shampoo trees."  Worse, Plaintiffs

9   do not provide any alternative definition stating what they *did* believe.  *See Kane v.*

10  *Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 134385, at *24-25

11  (N.D. Cal. Sept. 19, 2013) (dismissing claims as implausible where plaintiff did not

12  allege what she believed "evaporated cane juice" meant if not sugar).

13        Courts have repeatedly dismissed claims based on subjective statements that

14  could not have deceived a consumer.  For example, Judge Walter recently

15  dismissed claims challenging the "All Natural" labeling on Buitoni Pasta because

16  plaintiff "fail[ed] to offer an objective or plausible definition of the phrase 'All

17  Natural,' and the use of the term 'All Natural' is not deceptive in context."  *Pelayo*,

18  2013 WL 5764644, at *4.  Ms. Pelayo alleged that the pastas were not "all natural"

19  because they contained ingredients that are unnatural, artificial, or synthetic.  The

20  court found her claims implausible because she alleged various definitions of

21  "natural" that did not apply to the products at issue and because federal agencies

22  have concluded that "natural" may be used in numerous contexts.  As such, it was

23  "implausible that 'a significant portion of the general consuming public or of

24  targeted consumers' would be deceived or mislead by the use of the term 'All

25  Natural' on the [pasta]."  *Id.*, at *5.  The same reasoning applies here.

26        Plaintiffs cannot allege they were deceived by a word that even they cannot

27  define and that FDA has refused to define.

28

1     <u>Second</u>, the additional information on the product labels explains what

2     "natural" means with respect to Alba Botanica® cosmetics.  Given FDA's lack of

3     guidelines and the inherent subjectivity of the term "natural" as applied to

4     cosmetics, Hain has supplemented the subjective word with objective information.

5     Consumers, therefore, have detailed information about the products, so they can

6     make an informed purchase decision.  Plaintiffs apparently agree, as they cite

7     extensively from the product labels and Hain's website.

8     For example, Plaintiffs describe Alba Botanica®'s website, which states,

9     "We make natural, 100% vegetarian[3] personal care products that do beautiful for

10    you and your friends: people, animals + earth.  *This means we DON'T use*

11    *parabens, sulfates, or phthalates*."  (FAC ¶ 15 (emphasis added).)  Plaintiffs further

12    explain that "natural" means that Hain makes "maximum use of ingredients from

13    our wonderful Earth's plant sources…from rich vegetable and nut oils to pure plant

14    waxes to herbal extracts and pure essential oils."  (FAC ¶ 15.)   Plaintiffs go on to

15    explain that Hain says "Alba Botanica® products are formulated without: parabens,

16    phthalates, artificial colors, propylene glycol, aluminum, mineral oil, petrolatum,

17    oxybenzone, PABA, nano-particles, DEA, MEA or TEA, PEGs and PEG

18    derivatives, ethoxylated ingredients associated with 1,4 dioxane, formaldehyde

19    donors, or GMOs."  (FAC ¶ 15.)

20    The label statements Plaintiffs describe in the FAC offer further clarity.  The

21    front label for "Hawaiian Shampoo – Drink It Up Coconut Milk" says "no

22    damaging sulfates or drying formaldehydes."  (FAC ¶ 12.)  And Plaintiffs cite the

23    back label of "Very Emollient Lotion – Maximum" which explains the product is

24    natural because it "blends aloe vera, green tea and chamomile extracts plus

25

26    [3] Plaintiffs also take issue with the term "vegetarian" because the products are not
      made entirely of vegetables, fruits, grains, nuts, and dairy.  (FAC ¶ 13 n.4.)  If, by

27    this, they are suggesting that they reasonably believed the cosmetics could be eaten,
      say, like a vegetable stew, such a belief would be implausible.

28

antioxidants to nourish, soothe and soften dry skin on contact.  Cellular renewal is supported with alpha hydroxy acids…" (FAC ¶ 14.)  The labels nowhere state that the products are free of "synthetics" or any of the ingredients Plaintiffs now complain of.

In attempting to state a claim, Plaintiffs have revealed why they have none.  The labels and website state precisely why the Alba Botanica® products are "natural:" they include ingredients from "Earth's plant sources" and they don't include parabens, phthalates, or the other ingredients listed.  Plaintiffs' allegation that they (or any reasonable consumer) were deceived by this explanatory information is implausible.  *See Freeman*, 68 F.3d at 290 ("Any ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole").  Their strained interpretation of "natural" makes about as much sense as complaining that "Hawaiian Shampoo – Drink It Up Coconut Milk" is suitable to drink.

In sum, Plaintiffs cannot explain how they, or any reasonable consumer, were misled by the term "natural," given the detailed information included in the FAC that explains what "natural" means in this context.

Third, the ingredient list accurately states everything contained in the products.  No reasonable consumer concerned about the ingredients in their shampoo and body wash would ignore the ingredient list.  As FDA has stated, "consumers who are concerned about the source of a cosmetic product's ingredients" can read the mandated ingredient list.  *See Astiana*, Plaintiffs'-Appellants' Motion for Judicial Notice, Ex. A, No. 12-17596 (9th Cir.) (Dkt. 8-3).  *See also Pelayo*, 2013 WL 5764644, at *5 ("to the extent there is any ambiguity regarding the definition of 'All Natural' with respect to each of the Buitoni Pastas, it is clarified by the detailed information contained in the ingredient list"); *Kane*, 2013 U.S. Dist. LEXIS 134385, at *35-36 ("Because the labels clearly disclosed the presence of [the challenged ingredients], it is not plausible that Plaintiff believed,

based on Defendant's "[o]nly natural ingredients" or "all natural" representations, that the Yogurts did not contain [the challenged ingredients]"); *Viggiano v. Hansen Natural Corp.*, No. CV 12-10747 MMM (JCGx), 2013 U.S. Dist. LEXIS 70003, at *37 n.38 (C.D. Cal. May 13, 2013) ("courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the food or drink clear"); *Hairston v. S. Beach Bev. Co.*, No. 12-cv-01429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of the [product]").[4]

Moreover, a reasonable consumer would expect the allegedly offensive ingredients to be present in shampoo, lotion, sun care products, and shower gel. Few, if any, cosmetic products are safely formulated as unaltered products of the earth, and FDA even defines cosmetic products as "manufactured."  21 C.F.R. § 700.3(b).  As described above, they are manufactured by mixing "chemical" ingredients through "chemical, physical, biological, or other procedures." 21 C.F.R. § 700.3(e), (k).  Shampoo, for example, works by dissolving oil.  This requires a detergent.  Indeed, Plaintiffs do not allege that any other similar products are more "natural" than Alba Botanica®'s.  *See Astiana*, 905 F. Supp. 2d at 1016 ("cosmetics are by their nature artificial and/or synthetic").

Their attempt to state a plausible claim is belied by the labels themselves. Ignoring the product descriptions that explain the term "natural," the ingredient list on the labels, and the reasonable expectations of the types of ingredients that would

---

[4] *See also Reid v. Johnson & Johnson*, No. 11cv1310 L (BLM), 2012 U.S. Dist. LEXIS 133408, at *11-12 (S.D. Cal. Sept. 17, 2012) ("not possible for the reasonable consumer to be deceived by Benecol's 'No Trans Fat' and 'No Trans Fatty Acids' labels" because the ingredient list stated "partially hydrogenated soybean oil"); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 162 Cal. Rptr. 3d 652 (2013) (dismissing plaintiff's claim that she did not realize "spreadable butter" contained olive oil when olive oil was included on the label).

1  be present in cosmetics, Plaintiffs' manufactured claims cannot stand.  The Court

2  should dismiss the FAC for failure to state a plausible claim.

3  **B.**     **Plaintiffs Have Not Pled Their Case with the Requisite**
             **Particularity Required by Rule 9(b).**

4

5  Plaintiffs claim that the term "natural" on Alba Botanica® products is

6  misleading and deceptive; therefore, they must meet the more stringent

7  requirements of Rule 9(b).  (*See, e.g.,* FAC ¶ 16 ("the term 'Natural' is misleading

8  to a reasonable consumer").)  Averments of fraud must be accompanied by "the

9  who, what, when, where, and how of the misconduct charged, as well as what is

10  false or misleading" about the statement and why it is false.  *Cafasso v. Gen.*

11  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted); *see*

12  *also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

13  Plaintiffs fail this test.

14  As described above, Plaintiffs fail to state what they believed "natural"

15  meant, how the products were deceptive, and how they were injured.  They also fail

16  to allege reliance with the required particularity.  This is fatal.  *See Kwikset Corp. v.*

17  *Super. Ct.*, 51 Cal. 4th 310, 326-27, 120 Cal. Rptr. 3d 741 (2011) (actual reliance

18  required under UCL and CLRA); *Homchick v. Allstate Ins. Co.*, No. C04-5639RJB,

19  2005 U.S. Dist. LEXIS 25645, at *12 (W.D. Wash. Oct. 19, 2005) ("[i]n order to

20  demonstrate the requisite causal link [under the WCPA], plaintiffs must

21  demonstrate their reliance upon the false advertisement in purchasing the

22  defendant's goods or services"); *Mulligan v. Choice Mortg. Corp. USA*, No. 98-

23  596-B, 1998 U.S. Dist. LEXIS 13248, at *35 (D.N.H. Aug. 11, 1998) (plaintiff

24  bringing claim under NHCPA must "establish a causal link between the conduct at

25  issue and his or her injury").[5]  Because the FAC does not allege facts establishing

26  _____

27  [5] Reliance might not be required under New Hampshire law.  In *Mulligan*, the
    district court applied Massachusetts law, sometimes used to interpret the NHCPA,

28  to conclude that reliance is not required.  Nevertheless, for the "natural" statement

    (Footnote continues on next page.)

1   that Plaintiffs relied on the alleged misrepresentation to their detriment, the claims

2   under California, Washington, and New Hampshire law must be dismissed.

3        Rather than explain how they were misled by the term "natural" and what

4   they believed the term meant, Plaintiffs simply recite the boilerplate allegation that

5   they "viewed and relied on the Products' [principal display panel] that represented

6   that the Products were 'Natural' and paid a premium for the Products over

7   comparable lotion and hair care products that do not purport to be natural."  (FAC

8   ¶ 8.)  This assertion is nothing more than a bare conclusion.  What did they

9   understand "natural" to mean?  FDA has declined to define the term, but Plaintiffs

10  must offer some explanation of what they thought the word meant in order to state a

11  claim.  Courts repeatedly find such conclusory allegations insufficient.  *See, e.g.,*

12  *Kane*, 2013 U.S. Dist. LEXIS 134385, at *36 (dismissing "natural" claims for

13  failure to adequately allege reliance).

14       The details they do provide merely expose the holes in their theory.  They

15  claim they paid a premium over products "that do not purport to be natural" (FAC

16  ¶ 8), and even list the allegedly inoffensive products.  For example, they identify

17  "Nature's Gate Herbal Skin Therapy Lotion" as a cheaper lotion product.  What

18  they fail to mention, however, is that this "Nature's Gate" product is described on

19  the front label with the phrase "Natural Moisture Boosters."[6]  (FAC ¶ 18.)  How

20  were Plaintiffs misled by the Alba Botanica® labels, but not these similar ones?

21  Why do they think "natural" has a different meaning on different products?  While

22  the FAC does distinguish the allegedly comparable products in a different

23  paragraph as not representing they are "comprised *entirely* of natural ingredients"

24  (FAC ¶ 18 (emphasis added)), it does not allege that Plaintiffs understood or relied

25  (Footnote continued from previous page.)

26  to have *caused* an injury, Plaintiffs would have needed to rely on the statement.
    Otherwise, they could not have been misled.

27  [6] A copy of this label is attached as **Exhibit A** to Defendant's Request for Judicial
    Notice (RJN).

28

1   on such a distinction.  Instead, they simply avoid explaining why some, but not all,

2   "natural" labels misled them.

3       The Court should dismiss their claims for failing to meet the requirements of

4   Rule 9(b).

5   **C.  Plaintiffs' Claims Should Be Dismissed Under the Primary**
    **      Jurisdiction Doctrine.**

6

7       The Court should also dismiss Plaintiffs' claims on primary jurisdiction

8   grounds, along with a growing number of judges in other labeling cases.  FDA has

9   declined to define the term "natural" in the context of cosmetics, but it still remains

10  the only body with the authority to do so.

11      The primary jurisdiction doctrine applies where a plaintiff's claims implicate

12  a federal agency's expertise for a regulated product.  *United States v. W. Pac. R.R.*

13  *Co.*, 352 U.S. 59, 63-64, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) (primary jurisdiction

14  doctrine applies "whenever enforcement of [a] claim requires the resolution of

15  issues which, under a regulatory scheme, have been placed within the special

16  competence of an administrative body").  The doctrine is based on the need for

17  agency expertise and a uniform interpretation of a statute or regulation.  *See Syntek*

18  *Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780-81 (9th Cir. 2002);

19  *see also Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).

20  "[W]here determination of a plaintiff's claim would require a court to decide an

21  issue committed to the FDA's expertise without a clear indication of how FDA

22  would view the issue, courts of this district have repeatedly found that dismissal or

23  stay under the primary jurisdiction doctrine is appropriate."  *Hood v. Wholesoy &*

24  *Co.*, No. 12-cv-5550-YGR, 2013 U.S. Dist. LEXIS 97836, at *12-17 (N.D. Cal.

25  July 12, 2013).

26      The Ninth Circuit has made clear that deference to FDA's comprehensive

27  regulatory scheme is necessary.  Rejecting a plaintiff's attempt to sue over the name

28

1  of a juice product, the court stated, "If the FDA believes that this context misleads

2  consumer, it can act.  But the FDA has apparently not taken a view on whether

3  Coca-Cola's labeling misleads consumers—even though it has acted extensively

4  and carefully in this field."  *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d

5  1170, 1178 (9th Cir. 2012).  The same is true here.

6      Following the Ninth Circuit's ruling in *POM Wonderful*, many other courts

7  have found that similar claims should be dismissed in deference to FDA's judgment

8  and authority.  In another case challenging "natural" labels on cosmetics, a court

9  granted defendant's motion to dismiss, stating:

10          In the absence of any FDA rules or regulations (or even informal
            policy statements) regarding the use of the word "natural" on
11          cosmetics labels, the court declines to make any independent
            determination of whether defendants' use of "natural" was false or
12          misleading.  Doing so would "risk undercutting the FDA's expert
            judgments and authority."
13

14  *Astiana*, 905 F. Supp. 2d at 1014-15 (citing *POM Wonderful*, 679 F.3d at 1177).

15  *See also All One God Faith, Inc. v. Hain Celestial Grp,, Inc.*, No. C 09-3517 SI,

16  2012 U.S. Dist. LEXIS 111553, at *33 (N.D. Cal. Aug. 8, 2012) (Plaintiff's

17  allegations challenging "organic" statements "would intrude upon and undermine

18  the USDA's authority to determine how organic products should be produced,

19  handled, processed and labeled"); *Hood*, 2013 U.S. Dist. LEXIS 97836, at *21

20  (dismissing claims challenging use of the terms "soy yogurt" and "evaporated cane

21  juice" because FDA has not issued a "clear statement" regarding these labeling

22  statements); *Cox v. Gruma Corp.*, No. 12-CV-6502 YGR, 2013 U.S. Dist. LEXIS

23  97207 (N.D. Cal. July 11, 2013) (dismissing claims challenging "natural"

24  statements on products allegedly containing genetically modified ingredients and

25  referring the issue to FDA).

26      So too here.  Congress has granted FDA with authority over the controlling

27  issue in this case by directing it to ensure that "cosmetics are safe and properly

28  labeled."  21 U.S.C. § 393(b)(2)(D).  FDA has considered whether to define

1    "natural" and declined to take the action Plaintiffs now request of this Court.

2    Indeed, FDA has noted the difficulty in attempting to define "natural" in the context

3    of food, where it has issued an informal policy regarding the term, stating "there are

4    many facets of this issue that the agency will have to carefully consider if it

5    undertakes a rulemaking to define the term 'natural.'"  58 Fed. Reg. at 2407.  This

6    is all the more true for cosmetics, which FDA defines as "manufactured" products.

7    For these complicated products, FDA has not offered any guidelines as to the term.

8        In fact, FDA recently explained its decision not to define "natural" in the

9    context of cosmetics.  After the court dismissed "natural" claims in *Astiana*,

10   plaintiff's counsel wrote to FDA requesting an administrative determination

11   regarding the term.  FDA declined, explaining that the isssue does not "fit within

12   [its] current health and safety priorites," and noting that cosmetics already must

13   bear a list of ingredients, which "might aid consumers who are concerned about the

14   source of a cosmetic product's ingredients."  *Astiana*, Plaintiffs'-Appellants'

15   Motion for Judicial Notice, Ex. A, No. 12-17596 (9th Cir.) (Dkt. 8-3).  It further

16   confirmed that the agency has never interpreted "natural" in cosmetic labeling and

17   that, if it did, it "would expect to act in a transparent manner by engaging in a

18   public proceeding."  *Id.*  Thus, FDA is fully aware of the term's subjectivity and its

19   authority to define "natural" if it so chooses.  Instead of doing so, however, FDA

20   continues to rely on the comprehensive labeling requirements for cosmetic products

21   as the sole requirements.  *See* 21 C.F.R. pts. 700-740 ("Cosmetic Labeling")

22   (specifying detailed labeling requirements, such as prominence of statements and

23   identification of ingredients).

24       In sum, there is no standard that governs the use of "natural" on cosmetic

25   product labels, and this Court should not impose one.  FDA's decision not to act

26   with respect to a particular labeling claim is entitled to deference.

27

28

1

2

**D.    Plaintiffs Lack Standing to Sue over Products They Never Purchased.**

3      A plaintiff must plead and prove "injury in fact," causation, and

4    redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct.

5    2130, 119 L. Ed. 2d 351 (1992).  "Injury in fact" requires damage to "a legally

6    protected interest which is (a) concrete and particularized, and (b) actual or

7    imminent, not conjectural or hypothetical."  *Id.*  (internal citations omitted).

8    Plaintiffs cannot satisfy these requirements.

9      Plaintiffs allege that they purchased only six Alba Botanica® products: Very

10    Emollient Bath & Shower Gel (Lavender), Very Emollient Lotion (Maximum),

11    Very Emollient Lotion (Unscented original), Hawaiian Shampoo – Drink It Up

12    Coconut Milk, Hawaiian Conditioner – Drink It Up Coconut Milk, and Hawaiian

13    Leave-In Conditioning Mist – Drink It Up Coconut Milk.  (FAC ¶¶ 7-8.)  Yet, they

14    bring a class action against an assortment of 33 products.  The claims against

15    unpurchased products fail.

16      You can't be injured by what you didn't buy.  Unless Plaintiffs actually

17    bought a product, they cannot prove that they "suffered any injury or lost money or

18    property *with respect to those products*."  *Carrea v. Dreyer's Grand Ice Cream,*

19    *Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan.

20    10, 2011) (plaintiff who bought Drumsticks® cannot sue over Dibs®), *aff'd*, 475 F.

21    App'x 113 (9th Cir. 2012); *see also Johns v. Bayer Corp.*, No. 09CV1935 DMS

22    (JMA), 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010).  They may

23    as well sue Hain over a puddle in which they *didn't* slip and fall.

24      *Johns v. Bayer* is instructive.  There, the plaintiff sought to sue over products

25    he did not purchase arguing that those claims "stem[] from a uniform advertising

26    campaign designed to promote the health benefits of selenium."  *See Johns*,

27    2010 U.S. Dist. LEXIS 10926, at *12.  But as the *Johns* court held, "the statutory

28    standing requirements of the UCL and CLRA are narrowly prescribed and do not

1  permit such generalized allegations." *Id.*, at *13; *see also Granfield v. NVIDIA*
2  *Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012)
3  ("[C]laims related to products not purchased must be dismissed for lack of
4  standing."); *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2013 WL
5  1402682, at *10 (N.D. Cal. Apr. 5, 2013) (same); *Larsen v. Trader Joe's Co.*,
6  No. C 11–05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) (same);
7  *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 2:10–CV–02630 JAM–KJN,
8  2011 WL 1497096, at *4 (E.D. Cal. Apr. 19, 2011) (same).[7]
9      The Court should dismiss all claims concerning Alba Botanica® products
10 Plaintiffs did not buy.

## E.   Plaintiffs Cannot Assert Violations of Other States' Consumer Protection Statutes.

13     Ms. Balser purchased Alba Botanica® products in New Hampshire and
14 Washington, and Ms. Kresha purchased products in California.  As such, they can
15 only sue over New Hampshire, Washington, and California law.  The Ninth Circuit
16 has held that under California's choice-of-law principles applicable here, a
17 plaintiff's "consumer protection claim should be governed by the consumer
18 protection laws of the jurisdiction in which the transaction took place."  *Mazza v.*
19 *Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).  Ignoring this governing

20
21 [7] Some courts have allowed claims against unpurchased products to survive a motion to dismiss if the plaintiff shows they are "substantially similar" to the purchased products.  Plaintiffs do not attempt to show how the 27 unpurchased
22 products are "substantially similar."  In fact, they are not.  Cosmetic products differ greatly in function, composition, and suggested use.  For example, the unpurchased
23 Hawaiian After Sun Lotion and Hawaiian Body Cream are different types of products than the purchased products and contain different product designs than the
24 two purchased Very Emollient Body Lotions.  These differences matter. *See Khasin v. R.C. Bigelow, Inc.*, No. C 12-02204 JSW, 2013 U.S. Dist. LEXIS 77084,
25 at *10-11 (N.D. Cal. May 31, 2013) (finding black tea products not substantially similar to green tea products because of differences in the packaging designs);
26 *Wilson v. Frito-Lay N.A., Inc.*, No. 12-cv-1586 SC, 2013 U.S. Dist. LEXIS 153136, at *13  (N.D. Cal. July 9, 2013) ("the Court cannot just assume that every one of
27 the Non-Purchased Product's labels is actionable in the same way as the [purchased products]").
28

1   rule, Plaintiffs allege violations of the consumer protection acts of 31 various states,

2   grouping them together into two alternative classes.  The law is settled that this is

3   not an option.

4        The consumer protection laws of the various states raise numerous individual

5   legal issues that would render class certification improper.  *Mazza*, 666 F.3d at 594;

6   *see also Zinser v. Accufix Research Inst., Inc*, 253 F.3d 1180, 1190 (9th Cir. 2001);

7   *In re Paxil Litig.*, 212 F.R.D. 539, 551 (C.D. Cal. 2003) ("differing standards of

8   liability required by laws of various states preclude a finding that common

9   questions of law predominate").  The Ninth Circuit in *Mazza* reasoned that "each

10  state has an interest in setting the appropriate level of liability for companies

11  conducting business within its territory" and that the "place of the wrong has the

12  predominant interest."  *Mazza*, 666 F.3d at 592, 593 (citation omitted).  Indeed, if

13  31 different consumer protection statutes were applied, "trial would devolve

14  quickly into an unmanageable morass of divergent legal issues [and] would be

15  incredibly time-consuming, unnecessarily disjointed, hopelessly confusing, and

16  unfairly prejudicial to [the defendant] and many, if not all, of the members of the

17  class."  *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1104 (C.D. Cal. 2012).

18       The prevailing view is that "the principle articulated in *Mazza* applies

19  generally and is instructive even when addressing a motion to dismiss."  *Frezza v.*

20  *Google Inc.,* No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5-6 (N.D. Cal.

21  Apr. 22, 2013).[8]  "Where … a representative plaintiff is lacking for a particular

22  state, all claims based on *that* state's laws are subject to dismissal."  *Granfield*,

23  2012 WL 2847575, at *3-4 (citing *In re Flash Memory Antitrust Litig.*, 643 F.

24  Supp. 2d 1133, 1164 (N.D. Cal. 2009)); *see also In re Graphics Processing Units*

25  _____

26  [8] *See also Banks v. Nissan N. Am., Inc.*, No. C 11-1022-PJH, 2012 U.S. Dist.
    LEXIS 37754, at *3 (N.D. Cal. Mar. 20, 2012) (dismissing class allegations);
    *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at

27  *2 (N.D. Cal. July 2, 2012) (same); *Koehler v. Litehouse, Inc.*, No. CV 12-04055
    SI, 2012 WL 6217635, at *7 (N.D. Cal. Dec. 13, 2012).

28

1     *Antitrust Litig.*, 527 F. Supp. 2d 1011. 1026-27 (N.D. Cal. 2007) (dismissing claims

2     based on consumer protection laws of every state from which no plaintiff was

3     named); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D.

4     Cal. 2008) (same).

5         Plaintiffs attempt to work around this settled law by claiming that 26 of the

6     states' laws can be brought (and lumped together) because they do not require

7     reliance by unnamed class members, do not require scienter, and allow class

8     actions.  (FAC ¶ 75 n.115.)  Alternatively, they claim 31 states' laws can be

9     brought (and lumped together as an alternative class) even though some do not

10    allow class actions.  (FAC ¶ 79 n.116.)  They are wrong.

11        The Court need not analyze the material conflicts in the states' consumer

12    protection laws to follow the rule that the law of the place of purchase governs.  Yet

13    even a brief examination reveals many material conflicts that belie Plaintiffs'

14    assurances that there are none.  The *Gianino* court addressed many of the statutes at

15    issue here and discussed the conflicts.  846 F. Supp. 2d at 1100-02.  It found, for

16    example, that while most states require injury and deception, Delaware and the

17    District of Columbia do not, and Maryland requires "substantial injury."  And while

18    some states, such as California, require reliance, others, such as Alabama, do not.

19    The court went on to find differences in scienter, pre-filing notice, statutes of

20    limitations, the availability of class actions, remedies, and more. *Id.  See also*

21    *Frezza*, 2013 WL 1736788, at *5-6 (finding differences in available remedies under

22    California and North Carolina to be material); *Mazza*, 666 F.3d at 590-91 (finding,

23    among other things, differences in reliance requirements under California and

24    Florida law to be material).

25        Indeed, some of these states' consumer protection statutes explicitly prohibit

26    class actions.  Plaintiffs claim the Supreme Court's decision in *Shady Grove*

27    *Orthopedic Associates v. Allstate Insurance Co.*, 559 U.S. 393 (2010), allows them

28

to ignore these states' laws, but they are mistaken.[9]  Numerous courts interpreting *Shady Grove* agree.  *See, e.g., Bearden v. Honeywell Int'l, Inc.*, No. 3:09-1035, 2010 U.S. Dist. LEXIS 83996, at *30 (M.D. Tenn. Aug. 16, 2010) (upholding the Tennessee Consumer Protection Act's requirement that a private right of action may only be brought "individually"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No.1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254, at *5-8 (N.D. Ohio July 12, 2010) (upholding the Ohio Consumer Sales Practice Act's requirement that a class action can only be brought if the conduct was previously declared deceptive).  Here too, the various states' class action restrictions are so "intertwined with [the statutes'] rights and remedies that [they] function[] to define the scope of the substantive rights." *Bearden*, 2010 U.S. Dist. LEXIS 83996, at *30.

In sum, Plaintiffs may only bring claims under the laws of the states where they purchased Alba Botanica® products.  They cannot use three states' statutes as an opening to bring claims under 28 other states' materially different statutes.  The Court should dismiss Plaintiffs' claims based on these other states' consumer protection statutes.

**F.    The Court Should Strike Plaintiffs' Class Allegations.**

**1.    Plaintiffs' New Hampshire Class Fails Because Hain Does Not Maintain Its Principal Place of Business in New Hampshire.**

The Court should strike Plaintiffs' class claims under New Hampshire's consumer protection statute because Hain does not maintain its principal place of business in New Hampshire.  The NHCPA provides that a plaintiff may bring a

---

[9] In *Shady Grove*, the Court ruled that a New York procedural statute, largely analogous to Rule 23, but prohibiting class actions seeking penalties or statutory minimum damages, could not trump Rule 23.  Based on the procedural nature of the state statute, federal law could not be displaced.  The substantive state consumer protection statutes at issue in this case are a far cry from New York's procedural statute.

class action "against one or more defendants as individuals or as representatives of a class or against one or more such defendants *having a principal place of business within this state*…"  N.H. Rev. Stat. Ann. § 358-A:10-a (emphasis added). Plaintiffs allege that Hain's principal place of business is in Lake Success, New York.  (FAC ¶ 9.)  As such, a New Hampshire class cannot be maintained.

### 2. The New Hampshire, Washington, and California Classes are Overbroad.

Ms. Balser seeks to represent both a New Hampshire and Washington subclass based on her purchase of three products: Very Emollient Bath & Shower Gel (Lavender), Very Emollient Lotion (Maximum), and Very Emollient Lotion (Unscented Original).  (FAC ¶ 7.)  Yet her classes purport to include all of the 33 listed products, including hair care products that only Ms. Kresha alleges to have purchased.  Ms. Balser cannot use Ms. Kresha's California purchases to broaden her New Hampshire and Washington classes.

Ms. Kresha's purported California subclass is overbroad for the same reason. Ms. Kresha purchased four products: Very Emollient Lotion (Unscented Original), Natural Hawaiian Shampoo – Drink It Up Coconut Milk, Natural Hawaiian Conditioner – Drink It Up Coconut Milk, and Natural Hawaiian Conditioning Mist – Drink It Up Coconut Milk.  (FAC ¶ 8.)  Yet her class also purports to include all of the 33 listed products, including bath gel products that only Ms. Balser alleges to have purchased.

Plaintiffs are each representatives of different classes, and they cannot use their out of state co-plaintiff to expand their respective subclasses.  The New Hampshire and Washington subclasses should be limited to purchasers of the products Ms. Balser bought, and the California subclass should likewise be limited to purchasers of the products Ms. Kresha bought.

1

2

      **3.**     **The Court Should Strike Plaintiffs' Purported "Count V Class" and "Count VI Class."**

3

4

5

     As described in Section E, Plaintiffs cannot bring claims under the consumer protection laws of the various states.  Anticipating difficulties, Plaintiffs allege two classes in the alternative, hoping one will pass muster.  Both are flawed.

6

7

8

9

10

11

12

13

14

     The Count V Class includes purchasers in 26 states, and the Count VI Class includes purchasers in 31 states—the extra states being those whose consumer protection statutes explicitly prohibit class actions.  But Plaintiffs cannot sue over other states' consumer protection statutes and cannot represent absent class members whose claims are based on these other laws.  *See Mazza*, 666 F.3d at 594.  Furthermore, as described above, the Count VI Class fails because Plaintiffs cannot bring claims under consumer protection statutes that explicitly prohibit class actions.  *See Bearden*, 2010 U.S. Dist. LEXIS 83996, at *30.  The Court should strike both classes.

15

**V.**    **CONCLUSION**

16

17

     For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiffs' claims and grant the motion to strike, with prejudice.

18

19

20

21

Dated:  October 29, 2013

     WILLIAM L. STERN
CLAUDIA M. VETESI
KATHLEEN B. RONEY
PURVI PATEL
MORRISON & FOERSTER LLP

22

23

By:   */s/ William L. Stern*
    William L. Stern

24

25

Attorneys for Defendant
THE HAIN CELESTIAL GROUP, INC.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of October, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ William L. Stern*
WILLIAM L. STERN

Attorneys for Defendant
THE HAIN CELESTIAL GROUP, INC.