WILLIAM L. STERN (Bar No. 96105)
WStern@mofo.com
CLAUDIA M. VETESI (Bar No. 233485)
CVetesi@mofo.com
KATHLEEN B. RONEY (Bar No. 268446)
KRoney@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

PURVI G. PATEL (Bar No. 270702)
PPatel@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
THE HAIN CELESTIAL GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ALESSANDRA BALSER and RUTH KRESHA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HAIN CELESTIAL GROUP, INC.,<br><br>Defendant. | Case No.   CV 13-05604 R (RZx)<br><br>**DEFENDANT THE HAIN CELESTIAL GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE**<br><br>Hon. Manuel L. Real<br><br>Date:   December 2, 2013<br>Time:   10:00 a.m.<br>Courtroom: 8 |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

I.    INTRODUCTION ............................................................................................1

II.   ARGUMENTS IN REPLY ..............................................................................2

    A.    Plaintiffs Fail to State a Plausible Claim. ..............................................2

    B.    Plaintiffs Have Not Pled Their Case with the Requisite
        Particularity Required by Rule 9(b). ......................................................7

    C.    Plaintiffs' Claims Should Be Dismissed Under the
        Primary Jurisdiction Doctrine. ...............................................................8

    D.    Plaintiffs Lack Standing to Sue over Products They Never
        Purchased. ............................................................................................11

    E.    Plaintiffs Cannot Assert Violations of Other States'
        Consumer Protection Statutes. .............................................................13

    F.    The Court Should Strike Plaintiffs' Class Allegations. ........................17

        1.    Plaintiffs' New Hampshire Class Fails Because
            Hain Does Not Maintain Its Principal Place of
            Business in New Hampshire. .....................................................17

        2.    The New Hampshire, Washington, and California
            Classes are Overbroad. .............................................................18

        3.    The Court Should Strike Plaintiffs' Purported
            "Count V Class" and "Count VI Class." ...................................18

III.  CONCLUSION ...............................................................................................18

CERTIFICATE OF SERVICE ...............................................................................1

1
2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

CASES

5

*Astiana v. Hain Celestial Grp., Inc.,*
    905 F. Supp. 2d 1013 (N.D. Cal. 2012)........................................................... 7, 9

6

7

*Bearden v. Honeywell Int'l, Inc.,*
    No. 3:09-1035, 2010 U.S. Dist. LEXIS 83996
    (M.D. Tenn. Aug. 16, 2010) ............................................................................ 16

8

9

*Brazil v. Dell Inc.,*
    585 F. Supp. 2d 1158 (N.D. Cal. 2008).......................................................... 17

10

11

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
    No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10,
    2011), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).................................................. 11

12

13

*Chin v. Gen. Mills, Inc.,*
    No. 12-2150, 2013 U.S. Dist. LEXIS 77345 (D. Minn. June 3, 2013) ............. 13

14

15

*Colucci v. ZonePerfect Nutrition Co.,*
    No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012)...................... 13

16

17

*Fisher v. Monster Beverage Corp.,*
    No. EDCV 12-02188 VAP, slip op. (C.D. Cal. Nov. 12, 2013) ........................ 10

18

19

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) .......................................................................... 5, 6

20

21

*Frezza v. Google Inc.,*
    No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ....... 15

22

23

*Granfield v. NVIDIA Corp.,*
    No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)........... 11, 14

24

25

*Hairston v. S. Beach Bev. Co.,*
    No. CV-12-01429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ..... 4, 5, 6

26

27

*Hood v. Wholesoy & Co.,*
    No. 12-cv-5550-YGR, 2013 U.S. Dist. LEXIS 97836
    (N.D. Cal. July 12, 2013) ................................................................................. 9

28

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
   Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899
   (N.D. Cal. June 11, 2007) ................................................................... 15

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2009 U.S. Dist. LEXIS 103408
   (N.D. Cal. Nov. 6, 2009) .................................................................... 14

*In re Apple & AT&TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008).............................................. 14

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
   270 F.R.D. 521 (N.D. Cal. 2010) ....................................................... 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)................................................ 7

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007).............................................. 14

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009).............................................. 14

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007)........................................ 14, 16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254
   (N.D. Ohio July 12, 2010) ................................................................. 16

*Johns v. Bayer Corp.*,
   No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926
   (S.D. Cal. Feb. 9, 2010)..................................................................... 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 7

*Lintz v. Bank of Am., N.A.*,
   No. 5:13-CV-01757-EJD, 2013 U.S. Dist. LEXIS 139717
   (N.D. Cal. Sept. 27, 2013) ................................................................... 7

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................. 14

*Noll v. Ebay Inc.*,
No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS 76323
(N.D. Cal. May 30, 2013) ............................................................................... 8

*Pardini v. Unilever U.S., Inc.*,
No. 13-1675 SC, 2013 WL 3456872 (N.D. Cal. July 9, 2013) ................... 14, 18

*Pelayo v. Nestle USA, Inc.*,
No. CV 13-5213-JFW, 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) .... 2, 3, 5, 6

*Perez v. Nidek Co.*,
711 F.3d 1109 (9th Cir. 2013) ...................................................................... 12

*POM Wonderful LLC v. Coca-Cola Co.*,
679 F.3d 1170 (9th Cir. 2012) ........................................................................ 9

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) ............................ 16

*Simpson v. Kroger Corp.*,
219 Cal. App. 4th 1352, 162 Cal. Rptr. 3d 652 (2013) ................................... 5

*Stephenson v. Neutrogena Corp.*,
No. C 12-0426 PJH, 2012 WL 8527784 (N.D. Cal. July 26, 2012) ............... 13

*Watkins v. Vital Pharm., Inc.*,
No. CV 12-09374 SJO, 2013 U.S. Dist. LEXIS 162495
(C.D. Cal. Nov. 7, 2013) ............................................................................... 10

*Williams v. Gerber Prods. Co.*,
552 F.3d (9th Cir. 2008) ................................................................................. 5

*Wilson v. Frito-Lay N.A., Inc.*,
No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136
(N.D. Cal. Oct. 24, 2013) .............................................................................. 13

*Won Kyung Hwang v. Ohso Clean, Inc.*,
No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ............... 7

*Zulewski v. Hershey Co.*,
No. CV 11-05117-KAW, 2013 U.S. Dist. LEXIS 58299
(N.D. Cal. Apr. 23, 2013) .............................................................................. 17

## STATUTES & REGULATIONS

21 U.S.C.
§ 393(b)(2)(D) ............................................................................................... 9

21 C.F.R.
pts. 700-740 ................................................................................................... 3
§ 700.3(e) ....................................................................................................... 3
§ 700.3(k) ....................................................................................................... 3

## I.      INTRODUCTION

Plaintiffs claim they were tricked by the "natural" statement on Hain Celestial's Alba Botanica® cosmetics labels.  Yet they fail to allege a plausible definition of "natural" or even state what *they* believed "natural" meant.  They ignore the context of the labels, which explains what the term is meant to convey and includes a comprehensive ingredient list.  And they ignore the fact that FDA believes "natural" labeling on cosmetics is subjective and has suggested consumers read the ingredient list for objective product information.  Their claims fail.

First, Plaintiffs claims are implausible.  In their Opposition, they focus on a plainly inapplicable dictionary definition of "natural," which they never allege they believed at the time of purchase.  Straining to defend their allegations, they claim the phrase "100% *vegetarian*"—printed on the back—is synonymous with "100% natural" and thus supports a finding of deception, and that Hain's products must meet the same "natural" standards as a 2,000 year-old "lotion" found in an ancient burial site.  Their claims fail on the face of the First Amended Complaint (FAC); the absurdity of the Opposition speaks for itself.

Second, Plaintiffs' fraud-based claims fail to meet the particularity requirements of Rule 9(b).  Plaintiffs fail to state how they relied on the labeling or how the labels could have deceived a reasonable consumer.  In response, they merely insist, contrary to the weight of authority, that they need not plead reliance with particularity.

Third, the primary jurisdiction doctrine bars their claims.  FDA comprehensively regulates cosmetics labeling and has expressly declined to define the term "natural."  Plaintiffs' only response is that FDA's judgment should not be entitled to deference because that would prevent Plaintiffs from being able to "police" cosmetics labels.  But such authority is vested in FDA, not Plaintiffs.

Fourth, you can't be injured by something you never bought.  Plaintiffs' claims against the 27 unpurchased products fail.  Plaintiffs want to defer this

1   question until class certification, but this is a matter of Article III standing that
2   should not be postponed.

3          *Fifth*, Plaintiffs bought Hain's products in three states, but attempt to sue
4   over the consumer protection statutes of 28 *other* states.  Again, Plaintiffs ask the
5   Court not to worry about this until class certification in spite of the prevailing view
6   that these claims should be dismissed.

7          *Sixth*, Plaintiffs' purported classes are overbroad and lack appropriate class
8   representatives.  The Court should strike the class allegations.

9   **II.    ARGUMENTS IN REPLY**

10         **A.    Plaintiffs Fail to State a Plausible Claim.**

11         Defendant showed in its Opening Memorandum that Plaintiffs' claims are
12   implausible.  (Mem., 3:20-10:2.)  FDA has confirmed that there is no objective
13   definition of "natural" in the context of cosmetics, and the labels at issue explain
14   precisely what "natural" is meant to convey.  Plaintiffs' Opposition proves the
15   point.  They focus on a dictionary definition of "natural" that plainly cannot apply
16   to cosmetics, while refusing to say what *they* believed "natural" meant.  Their
17   citation to a conflicting definition offered by FDA in the context of food just
18   highlights the subjectivity of the term.  Making matters worse, they insist that the
19   phrase "100% Vegetarian" is what renders the "natural" statement misleading and
20   that the products are clearly not "natural"—as compared to a recently discovered
21   2,000 year old lotion.  Their efforts fail.

22         *First*, Plaintiffs do not deny that "natural" has no objective meaning in the
23   context of cosmetics, but instead simply ask the Court to delay that finding.  (Opp.,
24   5:7-8.)  But "where a Court can conclude as a matter of law that members of the
25   public are not likely to be deceived by the product packaging, dismissal is
26   appropriate."  *Pelayo v. Nestle USA, Inc.*, No. CV 13-5213-JFW (AJWx), 2013 WL
27   5764644, at *3 (C.D. Cal. Oct. 25, 2013).  In *Pelayo*, Judge Walter found that
28   plaintiff's claim that the "all natural" label on Buitoni Pasta was misleading failed

1  because "she fail[ed] to offer an *objective or plausible definition* of the phrase, 'All

2  Natural,' and the use of the term 'All Natural' is not deceptive in context." *Id.*, at

3  *4 (emphasis added).  The same is true here.

4  Plaintiffs insist upon a dictionary definition of "natural" that makes no sense

5  in the context of cosmetics.  They claim a reasonable consumer would be misled

6  because "natural" means "existing in or produced by nature; not artificial."  (Opp.,

7  3:1-3.)  Notably, they still decline to state what *they* believed "natural" meant.  As

8  Defendant explained, no reasonable consumer would believe cosmetic products

9  exist in nature or are produced by nature.  The Merriam-Webster definition does not

10  apply here.  *See Pelayo*, 2013 WL 5764644, at *4 (finding dictionary definition of

11  "natural" "clearly does not apply" to pasta because it is a product manufactured in

12  mass, and reasonable consumers understand that it does not "spring[] fully-formed

13  from Ravioli trees").  Plaintiffs respond that the definition is reasonable because a

14  2000-year old "lotion" made from vegetable oil and plant resins was found in an

15  Italian burial ground.  (Opp., 8 n.8.)  But reasonable consumers understand that the

16  cosmetics they buy at Whole Foods are not the same as the ancient Etruscans would

17  have used.  Indeed, Plaintiffs admit that these ancient concoctions only existed

18  "before the advent of modern chemical engineering."  (Opp., 8:11-14.)  Plaintiffs'

19  archeological dig is fascinating, but is incompatible with present day cosmetics.[1]

20  FDA agrees.  Cosmetics, by definition, are "manufactured" products

21  composed by mixing "chemical" ingredients through "chemical, physical,

22  biological, or other procedures."  21 C.F.R. § 700.3(e), (k).  FDA thoroughly

23  regulates cosmetics labeling in 21 C.F.R. pts. 700-740, but notwithstanding these

---

[1] Plaintiffs also mention in a declaration that they believe a company called
TerrEssentials makes "natural" cosmetics.  (Declaration of Nicole Veno in Support
of Plaintiffs' Opposition ("Veno Decl.").)  Consumers would not expect Hain's
products to be similar to these.  The company's "hair wash," for example, is not
"shampoo."  Its website describes in detail how to undergo a "detox protocol" after
giving up shampoo, and the hair wash is not to be used on chemically treated hair.
The company also recommends that products be used within three to six months.

1  detailed requirements, the agency has expressly declined to force an objective

2  definition on the term "natural."  FDA instead suggests that "consumers who are

3  concerned about the source of a cosmetic product's ingredients" should look at the

4  required list of ingredients.  *Astiana*, Plaintiffs-Appellants' Motion for Judicial

5  Notice, Ex. A, No. 12-17596 (9th Cir.) (Dkt. 8-3).

6      Plaintiffs' discussion of FDA's "natural" policy for food highlights their

7  claim's implausibility.  They believe it is "worth noting" that in the context of food

8  products, FDA has said that "natural" means that nothing artificial or synthetic has

9  been added *that would not normally be expected*.  (Opp., 5 n.4 (citing 58 Fed. Reg.

10  2302, 2407 (Jan. 6, 1993)).)  But this definition contradicts Plaintiffs' alleged

11  "exists in nature" definition, and emphasizes the subjectivity of the term.

12      Subjectivity and plausibility matter.  (Mem., 4:12-5:2 (citing cases).)

13  Plaintiffs dismiss Defendant's authorities as inapplicable because they don't all

14  address the term "natural," but Plaintiffs fail to refute the cases' holdings that vague

15  statements are non-actionable, and they fail to contend with Defendant's cases that

16  *do* address "natural" claims, such as *Pelayo* and *Hairston v. South Beach Bev. Co.*,

17  No. CV-12-01429-JFW (DTBx), 2012 WL 1893818, at *5 (C.D. Cal. May 18,

18  2012) (finding no reasonable consumer would be misled by "all natural" claims).

19  Instead, they insist that citing Merriam-Webster for a definition of "natural" in a

20  footnote of the FAC is all that is needed.  No matter that they do not allege they or

21  any reasonable consumer understood this definition or that it can plausibly be

22  applied to cosmetics.

23      Second, as in *Pelayo* and *Hairston*, the labels are not deceptive in context.

24  As Defendant showed, the product labels and Alba Botanica®'s website explain

25  what "natural" means with respect to these products.  While Plaintiffs now claim

26  this information is irrelevant because they did not plead that they saw anything

27  except the word "natural," Defendant only discussed the advertising alleged as

28

1  misleading in the FAC.  (FAC ¶¶ 12-15.)[2]  The FAC admits that these statements

2  define "natural" in the context of the products.  (*Cf.* FAC ¶¶ 14, 15.)  Moreover, the

3  ingredient list fully discloses each ingredient in the product, giving consumers

4  comprehensive information about what is in the product.  No reasonable consumer

5  concerned about the contents of their cosmetics would ignore this detailed

6  information.

7      At bottom, Plaintiffs argue that they can ignore the entire label *except* the

8  single word "natural" and claim they were misled.  This is not supported by law.

9  *See Pelayo*, 2013 WL 5764644, at *5 ("all natural" not misleading in context

10  because of the detailed ingredient information); *Hairston*, 2012 WL 1893818, at *5

11  (same); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1371-72, 162 Cal. Rptr.

12  3d 652 (2013) (affirming demurrer to complaint attacking "Challenge Butter" as

13  being deceptive because it contained olive oil when "olive oil" was disclosed on the

14  label); (*see also* Mem., 8:18-9:10 (citing cases)).

15      *Williams v. Gerber Products Co.*, 552 F.3d, 934 (9th Cir. 2008), is not to the

16  contrary.  In *Williams*, the court found that reasonable consumers should not have

17  to look for "small print" on the side of a label to disprove misleading statements on

18  the front label.  552 F.3d at 939.  But the labels at issue here are filled with

19  explanatory information about what is in the products.  Plaintiffs cited these

20  explanations at length in the FAC.  (*See, e.g.,* FAC ¶ 12 (front label states "no

21  damaging sulfates or drying formaldehydes"); ¶ 14 ("blends aloe vera, green tea

22  and chamomile extracts plus antioxidants").)  This is not a case where the truth is

23  hidden in the fine print; this is a case where the context of the label is clear and not

24  misleading.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) ("Any

25  _____

26  [2] Plaintiffs inexplicably claim the website explanations only "concern[] the 'vegetarian' nature of the Products."  (Opp., 9:14-16.)  The phrase reads: "**We make natural, 100% vegetarian personal care products** that do beautiful for you

27  and your friends: people, animals + earth.  This means we DON'T use parabens, sulfates, or phthalates."  (FAC ¶ 15.)

28

1   ambiguity that [plaintiff] would read into any particular statement is dispelled by
2   the promotion as a whole").[3]

3       Third, Plaintiffs attempt to rely on the "100% vegetarian" statement to
4   support their implausible "natural" claim.  Merriam-Webster, they say, defines
5   vegetarian as "'consisting wholly of vegetables, grains, buts [sic], and sometimes
6   eggs or dairy products,' all of which," Plaintiffs inexplicably conclude, "are 100%
7   natural."  (Opp., 3:3-7, 9 n.9 ("all ingredients that qualify as 'vegetarian' are 100%
8   natural").)  In other words, they ask this Court to accept that "vegetarian" is a
9   synonym for "100% natural."  But the obvious meaning of the term—and the
10  proper interpretation of Plaintiffs' cited definition—is that "vegetarian" describes
11  something that does not contain *meat*.

12      Nonetheless, Plaintiffs insist that the phrase "100% vegetarian" supports their
13  shaky claims and sets their case apart from other implausible "natural" cases.
14  (Opp., 3:3-7, 6 n.5 ("the Product labels in this case include an additional
15  misrepresentation [100% vegetarian] that the label in *Pelayo* lacked").)  This is
16  nonsense.

17      Fourth, Plaintiffs argue that other "natural" claims have survived the motion
18  to dismiss stage, so theirs should too.  But Plaintiffs' citations do not infuse their
19  claims with substance.  Some courts have in fact chosen not to rule on "natural"
20  claims at the motion to dismiss stage.  But *all* of Plaintiffs' cited cases concern
21  food, where FDA has provided a policy statement to guide the interpretation of

22

23

_____

24  [3] Plaintiffs attempt to ignore *Freeman*'s holding and all of Defendant's authorities
    that provide that alleged misrepresentations cannot be read out of context.  As in
25  *Freeman*, as well as *Pelayo* and *Hairston*, the surrounding language explains the
    "natural" representation.  Plaintiffs concede this when they think it serves their
26  cause.  Not only do they cite other representations on the label and website in detail
    as "further tout[ing] the 'natural' composition," (FAC ¶ 15) but they also focus on
27  the "vegetarian" statement on the back label as "confirm[ing] and reinforc[ing]" the
    word "natural."  (Opp., 6 n.5.)
28

"natural" food labels.[4]  Deciding whether claims challenging "natural" food statements are plausible is not the same as deciding that question for cosmetics.  *See Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012) ("cosmetics are by their nature artificial and/or synthetic").  FDA agrees.  Rather than offer informal guidelines regarding "natural" labeling as it did for food products, FDA chose not to offer any regulations or guidelines for the use of the term on cosmetics labeling because of the inherent subjectivity of the term in the context of cosmetics.

In sum, Plaintiffs' have failed to show that their claims are remotely plausible.  No reasonable consumer would be misled.

### B.    Plaintiffs Have Not Pled Their Case with the Requisite Particularity Required by Rule 9(b).

In its Opening Memorandum, Defendant showed that Plaintiffs failed to comply with Rule 9(b).  (Mem., 10:3-12:4.)  Plaintiffs fail to state what they believed "natural" meant, how they relied on the labeling, how the products were deceptive, and how they were injured.  Plaintiffs' only response is to claim Rule 9(b) does not apply to reliance.  They are wrong.

The Ninth Circuit has concluded that where a plaintiff's claims are all grounded in fraud, the "entire complaint must [] be pleaded with particularity." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  This includes reliance.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1198 (C.D. Cal. 2008) ("The reliance element is subject to the pleading requirements of Rule 9(b) because it is one of the 'circumstances constituting fraud'"); *see also Lintz v. Bank of Am., N.A.*, No. 5:13-CV-01757-EJD, 2013 U.S. Dist. LEXIS 139717, at *16-17 (N.D. Cal. Sept. 27, 2013) (dismissing claims because plaintiffs

---

[4] *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013), cited in the Opposition, does not address the term "natural."  It concerns the efficacy of antibacterial hand sanitizer.  (Opp., 4:10-11.)

1  must "plead reasonable reliance on alleged misstatements with particularity by

2  alleging facts of sufficient specificity, allowing a court to infer that

3  misrepresentations caused injury to plaintiffs) (citations omitted); *Noll v. Ebay Inc.*,

4  No. 5:11-CV-04585-EJD, 2013 U.S. Dist. LEXIS 76323, at *11-12 (N.D. Cal. May

5  30, 2013) (same).  Plaintiffs argue otherwise by citing two cases that rely on a case

6  from the Southern District of Indiana and go against the bulk of authority.  (Opp.,

7  11:9-16.)

8         This pleading defect is fatal.  How can they defend the FAC when they

9  decline to state what they believed "natural" meant and how they were deceived

10 and injured?[5]  Their claims fail.

11        The Court should dismiss their claims for failing to meet the requirements of

12 Rule 9(b).

13     **C.     Plaintiffs' Claims Should Be Dismissed Under the Primary
               Jurisdiction Doctrine.**

14

15        Defendant showed in its Opening Memorandum that Plaintiffs' claims should

16 also be dismissed on primary jurisdiction grounds.  (Mem., 12:5-14:26.)  FDA has

17 declined to define the term "natural" in the context of cosmetics, but it still remains

18 the only body with the authority to do so.  Plaintiffs claim this is "absurd" because

19 it would mean that no one besides FDA could "police" the use of the term "natural"

20 on labeling and "companies would be completely free to mislabel their products as

21

22  _____

23  [5] Plaintiffs insist they were not misled by the term "natural moisture boosters" on
    the Nature's Gate product because the context surrounding the term "natural"

24  clarified the statement.  But in fact the back label states: "A unique blend of natural
    emollients and soothing botanicals are combined with 7 skin conditioning

25  moisturizers."  (Veno Decl., Ex. B.)  Further, the FAC does not allege that Plaintiffs
    understood any such distinction, but the point supports Defendant's argument.

26  Plaintiffs cannot deny that the context of label claims matter.  The Alba Botanica®
    products also explain the "natural" phrase, as described above and as described in

27  the FAC.  Plaintiffs cannot state a claim by ignoring those contextual statements
    and by again claiming that "vegetarian" somehow "perpetuate[s] the 'Natural'

28  misrepresentation."  (Opp. 11 n.11.)

1  they wish." (Opp., 12:11-15.)  In essence, Plaintiffs complain that the primary

2  jurisdiction doctrine would strip them of the ability to usurp FDA's authority.

3      The better question is, Why do Plaintiffs think that they have been deputized

4  to police Hain's labels?  FDA regulates cosmetics labeling through a

5  comprehensive regulatory scheme and is tasked with ensuring that "cosmetics are

6  safe and properly labeled."  21 U.S.C. § 393(b)(2)(D).  Companies are not free to

7  mislabel their products; they must adhere to the detailed requirements mandated by

8  FDA.  The Ninth Circuit has made clear that FDA's inaction matters as much as its

9  action.  "If the FDA believes that this [labeling] misleads consumers, it can act.

10 But the FDA has apparently not taken a view on whether Coca-Cola's labeling

11 misleads consumers—even though it has acted extensively and carefully in this

12 field."  *POM Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir.

13 2012).[6]  So too here.

14      FDA has expressly declined to define the term "natural" on cosmetics

15 labeling, and Plaintiffs lack the authority to fill that gap with their own rules.

16 Indeed, in a nearly identical case challenging "natural" statements on cosmetics, the

17 court dismissed on primary jurisdiction grounds due to the absence of any rules,

18 regulations, or policy statements regarding use of the term.  *See Astiana*, 905 F.

19 Supp. 2d at 1014-15.  For the court to make an independent determination on the

20 issue would "risk undercutting the FDA's expert judgments and authority."  *Id.* at

21 1015 (citing *POM Wonderful*, 679 F.3d at 1177).  *See also Hood v. Wholesoy &*

22 *Co.*, No. 12-cv-5550-YGR, 2013 U.S. Dist. LEXIS 97836, at *12-17 (N.D. Cal.

23 July 12, 2013) ("[W]here determination of a plaintiff's claim would require a court

24 to decide an issue committed to the FDA's expertise without a clear indication of

25

26 [6] Plaintiffs are wrong that the holding of *POM Wonderful* only applies to Lanham
   Act cases.  (Opp., 14 n.13.)  Numerous courts have relied on the Ninth Circuit's
27 ruling to dismiss state consumer protection claims.  *See, e.g., Astiana*, 905 F. Supp.
   2d at 1014-15.
28

how FDA would view the issue, courts of this district have repeatedly found that dismissal or stay under the primary jurisdiction doctrine is appropriate."); *see also Watkins v. Vital Pharm., Inc.*, No. CV 12-09374 SJO (JCx), 2013 U.S. Dist. LEXIS 162495, at *10-11 n.3 (C.D. Cal. Nov. 7, 2013) (finding that the statement "zero impact" is "too ambiguous for the Court to determine whether it is factually correct" and that "resolving such ambiguity without FDA input could result in exactly the sort of 'undercutting' of FDA judgments that the primary jurisdiction doctrine is designed to prevent") (citing *POM Wonderful*, 679 F.3d at 1177).

Since the filing of Hain's Opening Memorandum, Judge Phillips of this Court entered a 53-page order dismissing a similar misbranding case, in part on primary jurisdiction grounds, and entering judgment.  As Judge Phillips said, "the matters at issue here have been placed by Congress within the jurisdiction of the FDA pursuant to statute and regulations that require the FDA's expertise.  The FDA has regulatory authority over food labeling…. Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration."  *See Fisher v. Monster Beverage Corp*., No. EDCV 12-02188 VAP, slip op. at 47 (C.D. Cal. Nov. 12, 2013) (ECF Dkt. No. 72); *see also id*. at 49 (finding class plaintiff's claims against beverage manufacturer that they failed to warn of product's caffeine content is "preempted under the Primary Jurisdiction Doctrine").

Plaintiffs insist that *Astiana* is no longer good authority because FDA issued a letter after the court's ruling stating that it would not define "natural," and this letter proves that FDA does not mean to occupy the regulatory field.  (Opp., 14:3-13.)  But FDA's letter is not an abdication of its authority.  It is confirmation that only FDA has the authority to regulate cosmetics labeling, but that "natural" is not subject to an objective definition in the context of cosmetics.  Moreover, it made clear that if FDA does decide to regulate the term, it "would expect to act in a transparent manner by engaging in a public proceeding."  *Astiana*, Plaintiffs'-

Appellants' Motion for Judicial Notice, Ex. A, No. 12-17596 (9th Cir.) (Dkt. 8-3). The issue still remains within FDA's realm of authority.  Congress didn't grant FDA authority on a "use it or lose it" basis.

Attempting to avoid *Astiana*'s ruling, Plaintiffs rely on cases addressing "natural" labels on *food* products instead.  But Plaintiffs themselves argue such cases are inapposite because "FDA *has* addressed the meaning of 'natural' in the context of foods."  (Opp., 15 n.15.)  Based on FDA's "natural" policy for food labeling, some courts have declined to dismiss on primary jurisdiction grounds. But in the case of cosmetics labeling, as *Astiana* points out, the Court has no guidance from FDA and lacks the authority to impose its own "natural" labeling standards.

### D.    Plaintiffs Lack Standing to Sue over Products They Never Purchased.

Defendant showed in its Opening Memorandum that Plaintiffs' claims against the 27 unpurchased products fail.  (Mem., 15:1-16:10.)  In response, Plaintiffs fail to meaningfully address cases holding that a plaintiff cannot be injured by a product she did not buy.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011) (unless plaintiff actually bought a product, he cannot prove that he "suffered any injury or lost money or property *with respect to those products*") (emphasis added), *aff'd*, 475 F. App'x 113 (9th Cir. 2012).[7]

---

[7] They claim that the details of the specific products at issue in *Carrea* and *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012), nullify the clear legal holding that "[a] plaintiff has standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of that product." *Granfield*, 2012 WL 2847575, at *6.  And they incorrectly describe *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010). Contrary to Plaintiffs' assertions, *Johns* did involve label representations, which allegedly contained the same misrepresentation about the health benefits of selenium.  The court held that the plaintiff "cannot expand the scope of his claims to include a product he did not purchase." *Id.*, at *13.

1    Instead, Plaintiffs ask the Court not to worry about their grossly overbroad
2    allegations until the class certification stage.  (Opp., 15:17-19.)  But Plaintiffs are
3    getting ahead of themselves.  No one has claimed to be injured by the unpurchased
4    products, and Rule 23 does not confer or expand Article III standing that a claimant
5    does not otherwise have.  Had Plaintiffs sued individually, they could have sued
6    only over products they bought.  There is no way for them to prove classwide
7    deception, reliance, and damages for all the products they didn't buy.  Moreover, to
8    respond to these hypothetical claims, Defendant will have to undertake substantially
9    broader discovery regarding unpurchased products and unseen labels that *no one*
10   claims caused any injury.  In short, Defendant's ability to defend against class
11   claims is severely, and unfairly, compromised.

12   While the district courts are not all in agreement, and some courts have
13   delayed this inquiry until class certification, the Ninth Circuit has sanctioned
14   addressing the issue at the pleading stage.  In *Perez v. Nidek Co.*, 711 F.3d 1109
15   (9th Cir. 2013), the Ninth Circuit affirmed the district court's order of dismissal,
16   holding that Article III standing requirements preclude class claims against
17   physicians who did not perform eye surgery on the named plaintiffs, even though
18   they may have performed it on other putative class members.  The Ninth Circuit
19   found *at the pleading stage* that this raised a "serious standing question."  *Id.* at
20   1113.  The same is true here.

21   Even if this Court were to allow claims to proceed against unpurchased
22   products, Plaintiffs concede that the products must at least be "substantially
23   similar."  (Opp., 16:11-15.)  But as Defendant explained, Plaintiffs do not
24   adequately allege the 33 products meet this standard.  Nor can they.  The various
25   products are not simply "differently-scented varieties."  The assortment of products
26   includes sun care products that no Plaintiff purchased, and the items contain
27   different product designs and label representations.  Again, ignoring the rest of the
28   label when it suits them, Plaintiffs claim the only labeling aspect that matters is the

word "natural." And they dismiss Defendant's authorities because "all of [Hain's] misrepresentations are identical." (Opp., 18:12-13.) But the statements besides "natural" matter. Plaintiffs concede this, as they cite other label statements at length in the FAC and rely on them heavily in the Opposition. (*See, e.g.,* Opp. 11 n.11 ("the back panels of Defendant's Products further perpetuate the 'Natural' misrepresentation").)

Many courts have found that similar differences are relevant. *See, e.g., Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 26, 2012) (dismissing claims over five Neutrogena Naturals products because plaintiff had only purchased the purifying facial cleanser, and finding the products not similar enough "such that an individualized factual inquiry was not needed for each product"); *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) (factors relevant to similarity include "whether the challenged products are of the same kind [and] whether they are comprised of largely the same ingredients") (emphasis added); *Chin v. Gen. Mills, Inc.*, No. 12-2150 (MJD/TNL), 2013 U.S. Dist. LEXIS 77345, at *7 (D. Minn. June 3, 2013) (dismissing claims against types and flavors of granola bars other than those plaintiffs purchased); *Wilson v. Frito-Lay N.A., Inc.*, No. 12-1586 SC, 2013 U.S. Dist. LEXIS 153136, at *13 (N.D. Cal. Oct. 24, 2013) (not enough to list the products and say "they are all basically the same").

The Court should dismiss all claims concerning Alba Botanica® products Plaintiffs did not buy.

E. **Plaintiffs Cannot Assert Violations of Other States' Consumer Protection Statutes.**

Defendant showed in its Opening Memorandum that, having purchased products in New Hampshire, Washington, and California, Plaintiffs can sue *at most* over New Hampshire, Washington, and California law. (Mem., 16:11-19:17.) The

1   Ninth Circuit has made clear that "[e]ach class member's consumer protection

2   claim should be governed by the consumer protection laws of the jurisdiction in

3   which the transaction took place."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

4   594 (9th Cir. 2012).  "Thus, '[w]here … a representative plaintiff is lacking for a

5   particular state, all claims based on that state's laws are subject to dismissal.'"

6   *Pardini v. Unilever U.S., Inc.*, No. 13-1675 SC, 2013 WL 3456872, at *9 (N.D.

7   Cal. July 9, 2013) (citing *Granfield*, 2012 WL 2847575, at *4).  Plaintiffs fail to

8   show otherwise.

9        First, Plaintiffs argue this issue must wait until class certification.  But they

10   ignore the fact that courts often strike improper class allegations at the pleadings

11   stage.  (Mem., 17:18-18:4.)  Plaintiffs dismiss these cases because they think the

12   decisions "improperly approach this as a question of *standing*."  (Opp. 21 n.23.)

13   They are wrong.  The prevailing view is that a named plaintiff lacks standing to sue

14   under the law of a state where she suffered no injury, and such issues are properly

15   resolved in a motion to dismiss.  *See In re Flash Memory Antitrust Litig.*, 643 F.

16   Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("Where…a representative plaintiff is

17   lacking for a particular state, all claims based on *that* state's laws are subject to

18   dismissal."); *Granfield*, 2012 WL 2847575, at *3-4 (dismissing non-Massachusetts

19   claims because the named plaintiff failed to allege that she made any purchases

20   outside of Massachusetts); *In re Graphics Processing Units Antitrust Litig.*, 527 F.

21   Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (dismissing state law claims because no

22   named plaintiff resided in those states); *In re Ditropan XL Antitrust Litig.*, 529 F.

23   Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing claims based on antitrust laws of

24   every state from which no plaintiff was named); *Pardini*, 2013 WL 3456872, at *9

25   (dismissing claims based on consumer protection laws of every state from which no

26   plaintiff was named); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288,

27   1309 (N.D. Cal. 2008) (same); *In re Actimmune Mktg. Litig.*, No. C 08-02376

28

1   MHP, 2009 U.S. Dist. LEXIS 103408, at *52 (N.D. Cal. Nov. 6, 2009) (same).[8]

2   This is not a class certification issue; it is a fundamental pleading defect.

3       <u>Second</u>, Plaintiffs fail to disprove Defendant's showing that their claims

4   under the laws of the 28 other states fail.  None of their cited authorities address

5   standing, leaving unrebutted the cases cited above that dismiss multi-state claims

6   for lack of standing.  Moreover, they rely on inapposite cases that do not involve

7   the conflicting statutes at issue here.  In *In re Abbott Laboratories Norvir Anti-Trust*

8   *Litigation*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal.

9   June 11, 2007), for example, the court allowed a nationwide unjust enrichment class

10  to proceed, noting that unjust enrichment claims are distinguishable from consumer

11  protection claims because their "very nature … requires a focus on the gains of the

12  defendants … [which] is a universal thread throughout all common law causes of

13  action for unjust enrichment."  *Id.*, at *9.  *In re Conseco Life Ins. Co. Lifetrend Ins.*

14  *Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010), is unpersuasive for the

15  same reason: it involved breach of contract and declaratory judgment claims, which

16  have fewer state-to-state variations.  In contrast, Plaintiffs allege a class based on

17  the laws of 31 consumer protection statutes and, recognizing their overreach, an

18  alternative class of 27 states' statutes.  Their claims cannot survive based on the

19  conclusory assertion that the various laws are "substantially similar."

20      Plaintiffs cannot deny that courts routinely find that similarly overbroad

21  multi-state classes cannot survive.  They claim Defendant's reliance on *In re*

22  *Graphics Processing* is misplaced because the court allowed a multi-state unjust

23  enrichment claim to proceed, again ignoring that unjust enrichment claims do not

24

25  [8] Plaintiffs attempt to disregard *Mazza* and some of the cases that interpret it
    because they prevent the application of California law to a nationwide class.  But
26  the underlying principle is the same: the consumer protection laws of dozens of
    states raise numerous individual legal issues rendering class certification improper.
27  Moreover, the cases interpreting *Mazza* show that improper class allegations are
    properly dismissed at the pleadings stage.  *See, e.g., Frezza v. Google Inc.*, No.
28  5:12-cv-00237-RMW, 2013 WL 1736788, at *5-6 (N.D. Cal. Apr. 22, 2013).

involve the well-documented material conflicts that exist among consumer

protection statutes.  And they brush aside the fact that the court dismissed plaintiffs'

state-law antitrust and consumer protection claims under the laws of states where

no named plaintiff resided, finding that "[e]ach claim under each state statute must

be analyzed separately" and that "[a] class cannot assert a claim on behalf of an

individual that they cannot represent."  *In re Graphics Processing Units Antitrust*

*Litig.*, 527 F. Supp. 2d at 1026.  Plaintiffs' only response is that those plaintiffs

might not have alleged that the statutes were similar to one another.  (Opp. 20 n.21.)

Plaintiffs claim Defendant's other authorities are inapplicable because they

involved 48-50 states instead of Plaintiffs' 26-31 states.  But what matters is the

existence—not the precise number—of material conflicts.

 In fact, Defendant's authorities describe conflicts among the very statutes at

issue here.  Plaintiffs have no answer to this.  For example, Defendant identified

conflicts over the injury requirement under the consumer protection statutes of

Delaware, the District of Columbia, and Maryland—statutes that are all lumped

together in both of Plaintiffs' purported multi-state classes.  It also identified

material conflicts over reliance under California and North Carolina law—again,

statutes that are lumped together in both classes.  Plaintiffs' only response is that

this inquiry is "premature."  (Opp., 22:7-11.)[9]

---

[9] Moreover, as Defendant explained, *Shady Grove Orthopedic Associates v. Allstate Insurance Co.*, 559 U.S. 393, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010), does not save Plaintiffs' claims under statutes that explicitly prohibit class actions.  Notably, Plaintiffs fail to cite any cases interpreting *Shady Grove*, including Defendant's cited authorities.  Those cases confirm that Justice Stevens' concurrence is the controlling opinion.  *See, e.g., Bearden v. Honeywell Int'l, Inc.*, No. 3:09-1035, 2010 U.S. Dist. LEXIS 83996, at *29 (M.D. Tenn. Aug. 16, 2010) (Justice Stevens' concurrence controls because "[w]hen a fragmented Court decides a case and no single rationale explaining that result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds") (citations omitted); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254, at *6 (N.D. Ohio July 12, 2010) (treating Justice Stevens' concurrence as controlling).  Thus, *Shady Grove* holds that Rule 23 trumps *procedural* state statutes.  It does not allow Plaintiffs to overrule state consumer

(Footnote continues on next page.)

1    Plaintiffs cannot use three states' statutes as an opening to bring claims under

2    28 other states' materially different statutes.  The Court should dismiss Plaintiffs'

3    claims based on these other laws.

4    **F.     The Court Should Strike Plaintiffs' Class Allegations.**

5    Defendant showed that Plaintiffs' class allegations are deficient.  (Mem.,

6    19:18-21:14.)  Plaintiffs respond that this argument is "procedurally flawed."

7    (Opp., 24:10-11.)  On the contrary, courts often strike class allegations at the

8    pleading stage where, as here, plaintiff has alleged a deficient class.  *Brazil v. Dell*

9    *Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008); *Zulewski v. Hershey Co.*,

10   No. CV 11-05117-KAW, 2013 U.S. Dist. LEXIS 58299, at *3-4 (N.D. Cal. Apr.

11   23, 2013) (Defendants may file motions to strike class allegations even if plaintiff

12   has not moved to certify) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d

13   935, 939 (9th Cir. 2009)).

14   **1.     Plaintiffs' New Hampshire Class Fails Because Hain Does**
     **Not Maintain Its Principal Place of Business in New**
15   **Hampshire.**

16   Defendant showed in its Opening Memorandum that Plaintiffs' claims under

17   New Hampshire's consumer protection statute fail because Hain does not maintain

18   its principal place of business in New Hampshire.  (Mem., 19:19-20:5.)  Plaintiffs

19   disagree on the textual interpretation of the statute, but as support, merely cite a

20   case that dismissed a New Hampshire consumer protection claim on different

21   grounds.  This is not sufficient.

22

23   _____

(Footnote continued from previous page.)

24   protection statutes that explicitly prohibit class actions—a requirement that is
     intertwined with the statutes' rights and remedies.  (Mem., 18:25-19:12 (citing
25   cases).)  Plaintiffs cite no authority holding otherwise.

26   Moreover, Plaintiffs claim the Opening Memorandum lacks any basis for
     dismissing claims under all but three states' laws, but the basis is explicit in the
27   FAC: the alternative class under 31 states' laws includes "additional states whose
     statutes … do not permit class actions."  (FAC ¶ 79 n.116.)

28

1

2

### 2.     The New Hampshire, Washington, and California Classes are Overbroad.

3      Ms. Balser seeks to expand her New Hampshire and Washington subclasses

4  by including all of the 33 listed products, including those that only Ms. Kresha

5  bought.  Likewise, Ms. Kresha seeks to broaden her California class by including

6  Ms. Balser's products.  All of their purported classes are overbroad.  Each class

7  must be limited to the products the purported class representative bought.

8      Plaintiffs' only response is that all of the products are "substantially similar"

9  to one another.  As discussed above, this conclusory allegation is insufficient.

10  Moreover, Plaintiffs seemingly admit elsewhere in their Opposition that a named

11  plaintiff is needed at least for each of the three *types* of products Plaintiffs allege,

12  stating that "Plaintiffs *collectively* purchased Products in all three product

13  categories alleged (body washes, lotions, and hair care products)."  (Opp., 17:1-2

14  (emphasis added).)  The Court should strike the overbroad class allegations.

### 3.     The Court Should Strike Plaintiffs' Purported "Count V Class" and "Count VI Class."

15

16

17      Defendant showed in its Opening Memorandum that Plaintiffs cannot bring

18  claims under the consumer protection laws of the various states.  Their attempt to

19  plead two alternative classes—one slightly more overbroad than the other—fails.

20  The law is settled that a plaintiff cannot represent absent class members whose

21  claims are based on other states' laws.  *See Pardini*, 2013 WL 3456872, at *9

22  (dismissing claims based on consumer protection laws of every state from which no

23  plaintiff was named).  The Court should strike both classes.

24  ## III.   CONCLUSION

25      For the foregoing reasons, Defendant respectfully requests that this Court

26  dismiss Plaintiffs' claims and grant the motion to strike, with prejudice.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  November 18, 2013

WILLIAM L. STERN
CLAUDIA M. VETESI
KATHLEEN B. RONEY
PURVI PATEL
MORRISON & FOERSTER LLP


By:  _/s/ William L. Stern_____
William L. Stern

Attorneys for Defendant
THE HAIN CELESTIAL GROUP, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on the 18th day of November, 2013, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ William L. Stern*
WILLIAM L. STERN

Attorneys for Defendant
THE HAIN CELESTIAL GROUP, INC.