Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESSANDRA BALSER and RUTH KRESHA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE HAIN CELESTIAL GROUP, INC., <br><br> Defendant. | Case No.:  13-cv-05604-R-RZ <br><br> CLASS ACTION <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date:     March 3, 2014 <br> Time:     10:00 A.M. <br> Judge:    Manuel L. Real <br> Place:    Courtroom 8 – 2nd Floor <br>                 312 N. Spring Street |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT: On March 3, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, 312 North Spring Street, Los Angeles, California 90012, before the Honorable Manuel L. Real, Plaintiffs Alessandra Balser and Ruth Kresha ("Plaintiffs"), will, and hereby do, move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an Order: (i) certifying this action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (ii) certifying the following class (the "Class"):

> All purchasers of the Products in the States of Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Maine, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, Rhode Island, Vermont, Washington, Wisconsin, and the District of Columbia, and all purchasers of the Products in the State of Alaska from August 2, 2011 to the present, who purchased the Products primarily for personal, family or household purposes. Specifically excluded from this Class are: the Defendant, the officers, directors and employees of Defendant; any entity in which Defendant has a controlling interest; any affiliate, legal representative of Defendant; the judge to whom this case is assigned any member of the judge's immediate family; and any heirs, assigns and successors of any of the above persons or organizations in their capacity as such.[*]

---

[*] The "Products" are the following Alba Botanica brand products: Natural Very Emollient Bath & Shower Gel (French Lavender, Honey Mango, Midnight Tuberose, Sparkling Mint and Island Citrus varieties); Natural Hawaiian Cocktail Body Wash (Creamy Pina Colada, Revitalizing Mai Tai and Exfoliating Lava Flow varieties); Natural Hawaiian Body Wash (Renewing Passion Fruit); Natural Hawaiian Exfoliating Body Wash (Rejuvenating Papaya Mango); Natural Hawaiian Cream Body Wash (Nourishing Coconut Milk); Natural Very Emollient Body Lotion (Unscented Original, Daily Shade Spf 15, Original and Maximum

1

1  (iii) in the alternative, certifying classes of purchasers from the states of California,

2  Washington, New Hampshire and any additional states which the Court determines

3  to have sufficiently similar law to any of these three states for them to be included

4  within these classes; (iv) appointing Plaintiffs as Class representatives; and (v)

5  appointing Izard Nobel LLP as Lead Counsel, and appointing The Lin Law Firm,

6  APLC as Liaison Counsel for the Class pursuant to Rule 23(g).

7        Plaintiffs are entitled to the relief requested because the requirements of

8  Rule 23(a), Rule 23(b)(3), and Rule 23(g) have been satisfied.  Plaintiffs have met

9  the requirements of Rule 23(a) because the size of the Class is so numerous that it

10  would be impracticable to join the claims of all Class members in one suit (*see*

11  Rule 23(a)(1)), there are questions of law and/or fact that are common to the Class

12  (*see* Rule 23(a)(2)), Plaintiffs' claims are typical of the claims of the Class (*see*

13  Rule 23(a)(3)), and Plaintiffs will fairly and adequately protect the interests of the

14  Class (*see* Rule 23(a)(4)).   Plaintiffs have satisfied the requirements of Rule

15  23(b)(3) because common questions of law and/or fact predominate, and a class

16  action is the superior method available to resolve the claims alleged in Plaintiffs'

17  First Amended Class Action Complaint (the "Complaint"). Finally, pursuant to

18  Rule 23(g), the Court should appoint Izard Nobel LLP as Lead Counsel, and

19  appoint The Lin Law Firm, APLC as Liaison Counsel for the Class, because these

20  firms have (i) done extensive work to date in identifying and investigating

21  varieties); Natural Hawaiian After Sun Lotion (Replenishing Kona Coffee);

22  Natural Hawaiian Hand & Body Lotion (Replenishing Cocoa Butter); Natural

23  Hawaiian Body Cream (Nourishing Coconut Milk, Rejuvenating Papaya Mango

24  and Deep Moisturizing Kukui Nut varieties); Natural Hawaiian Shampoo

25  (Colorific Plumeria, Body Builder Mango, Drink It Up Coconut Milk, So Smooth

26  Gardenia, Gloss Boss Honeydew and Real Repair Cocoa Butter varieties), Natural

27  Hawaiian Conditioner (Colorific Plumeria, Body Builder Mango, Drink It Up

28  Coconut Milk, So Smooth Gardenia, Gloss Boss Honeydew and Real Repair

Cocoa Butter varieties); and Natural Hawaiian Leave-In Conditioning Mist (Drink

It Up Coconut Milk).

2

potential claims in this action, (ii) extensive experience in handling class actions, complex litigation, and claims of the type asserted in this action, and (iii) knowledge of the consumer protection laws at issue.

This Motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the allegations in the Complaint; the Declaration of Nicole A. Veno ("Veno Decl.") in Support of Plaintiffs' Notice of Motion and Motion for Class Certification; and, on such other matters and arguments as may be presented to the Court.

Dated:  November 20, 2013          Respectfully submitted,

By: */s/ Elizabeth P. Lin*
Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Attorneys for Plaintiffs ALESSANDRA BALSER and RUTH KRESHA, Individually and on Behalf of All Others similarly Situated

3

# TABLE OF CONTENTS

I.    INTRODUCTION .......................................................................... 1

II.   PLAINTIFFS HAVE SATISFIED RULE 23(A) ......................... 3

    A.   The Class is Sufficiently Numerous ..................................... 3

    B.   There are Common Questions of Law or Fact....................... 5

    C.   Plaintiffs' Claims are Typical of the Claims or Defenses of
          the Class ................................................................................ 7

    D.   The Named Plaintiffs Will Fairly and Adequately Protect the
          Interests of the Class ............................................................ 8

III.  PLAINTIFFS HAVE SATISFIED RULE 23(B)(3)...................... 9

    A.   Common Questions of Law or Fact Predominate.............. 10

    B.   A Class Action is Superior to Other Methods of
          Adjudication........................................................................ 12

          1.   Rule 23(b)(3)(A) .................................................... 13

          2.   Rule 23(b)(3)(B) .................................................... 14

          3.   Rule 23(b)(3)(C) .................................................... 14

          4.   Rule 23(b)(3)(D) .................................................... 15

          5.   Plaintiffs' Trial Plan.............................................. 17

IV.   CONCLUSION ............................................................................ 19

i

1

# TABLE OF AUTHORITIES

2

3

**Cases**

4

*Amchem Products, Inc. v. Windsor*,

5

    521 U.S. 591 (1997) ...................................................................................... 3, 10

6

*American Timber & Trading Co. v. First Nat. Bank of Oregon*,

7

    690 F.2d 781 (9th Cir. 1982) ............................................................................. 18

8

*Anderson v. Jamba Juice,*

    888 F. Supp. 2d 1000 (N.D. Cal.2012) ............................................................... 8

9

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,

10

    Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 (N.D.

11

    Cal. July 20, 2010) .............................................................................................. 8

12

*Ballard v. Equifax Check Servs., Inc.*,

13

    186 F.R.D. 589, 600 (E.D. Cal. 1999) .............................................................. 13

14

*Barbosa v. Cargill Meat Solutions Corp.,*

    No. 1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ........... 13

15

16

*Beck-Ellman v. Kaz USA, Inc.,*

    283 F.R.D. 558 (S.D. Cal. 2012) ......................................................... 2, 4, 8, 12

17

*Blackie v. Barrack,*

18

    524 F.2d 891 (9th Cir. 1975) ...................................................................... 5, 12

19

*Bruno v. Quten Research Inst., LLC,*

20

    280 F.R.D. 524 (C.D. Cal. 2011) ...................................................................... 3, 7

21

*Carnegie v. Household Int'l, Inc.,*

22

    376 F.3d 656 (7th Cir. 2004) ....................................................................... 13, 14

23

*Cesale v. Kelly,*

24

    257 F.R.D. 396, 408-09 (S.D.N.Y. 2009) ......................................................... 18

25

*Charlebois v. Angels Baseball, LP,*

26

    No. SACV 10-0853 DOC ANX, 2011 WL 2610122 (C.D. Cal. June

    30, 2011) ............................................................................................................. 4

27

28

ii

*Chavez v. Blue Sky Natural Beverage Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010) .............................................................. 2, 5, 8

*Colucci v. ZonePerfect Nutrition Co.,*
    No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ........................ 8

*Dennis v. Kellogg Co.,*
    No. 09-CV-1786-IEG WMC, 2013 WL 1883071 (S.D. Cal. May 3,
    2013) ...................................................................................................... 4

*Gay v. Waiters' & Dairy Lunchmen's Union,*
    549 F.2d 1330 (9th Cir. 1977) ..................................................................... 4

*Guido v. L'Oreal, USA, Inc.,*
    284 F.R.D. 468 (C.D. Cal. 2012) ................................................................ 13

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 7, 9, 10, 16

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 7

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ....................................................................... 3

*In re Abbott Laboratories Norvir Anti-Trust Litig.,*
    No. 04-cv-4203, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................... 16

*In re China Intelligent Lighting & Electronics, Inc. Sec. Litig.,*
    No. CV 11-2768 PSG SSX, 2013 WL 5789237 (C.D. Cal. Oct. 25,
    2013) ...................................................................................................... 4

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.,*
    270 F.R.D. 521 (N.D. Cal. 2010) ............................................................... 16

*In re Ferrero,*
    278 F.R.D. 552 (S.D. Cal. 2011) ................................................................. 2

*In re Live Concert Antitrust Litig.,*
    247 F.R.D. 98 (C.D. Cal. 2007) ................................................................... 2

*In re Pharmaceutical Industry Average Wholesale Price Litig.,*
    230 F.R.D. 61 (D. Mass. 2005) .................................................................. 16

iii

*In re Pharmaceutical Industry Average Wholesale Price Litig.,*
   233 F.R.D. 229 (D. Mass. 2006) ...................................................................... 16

*In re POM Wonderful,*
   No. ML 10-02199 DDP (RZx), 2012 WL 4490860 (C.D. Cal. Sept.
   28, 2012) ...................................................................................................... 2, 5

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
   264 F.R.D. 603 (N.D. Cal. 2009) ...................................................................... 16

*Johns v. Bayer Corp.,*
   280 F.R.D. 551 (S.D. Cal. 2012) ................................................................... 2, 12

*Johnson v. General Mills, Inc.,*
   275 F.R.D. 282 (C.D. Cal. 2011) .................................................................... 5, 9

*Johnson v. General Mills, Inc.,*
   276 F.R.D. 519 (C.D. Cal. 2011) ....................................................................... 2

*Katz v. China Century Dragon Media, Inc.,*
   287 F.R.D. 575 (C.D. Cal. 2012) ....................................................................... 3

*Keegan v. American Honda Motor Co., Inc.,*
   284 F.R.D. 504 (C.D. Cal. 2012) ...................................................................... 16

*Lane v. Facebook, Inc.,*
   696 F.3d 811 (9th Cir. 2012) .............................................................................. 3

*Leyva v. Medline Indus. Inc.,*
   716 F.3d 510 (9th Cir. 2013) ............................................................................ 12

*Mazza v. Am. Honda Motor Co.,*
   666 F.3d 581 (9th Cir. 2012) ................................................................. 5, 10, 16

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ......................................................................................... 14

*Ries v. Arizona Beverages USA LLC,*
   287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................... 6

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010) ............................................................................ 7

iv

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992) ........................................................................ 7

*Shields v. Walt Disney Parks & Resorts US, Inc.,*
    279 F.R.D. 529 (C.D. Cal. 2011) .................................................................... 4

*Simpson v. Fireman's Fund Ins. Co.,*
    231 F.R.D. 391 (N.D. Cal. 2005) .................................................................... 7

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .......................................................................... 9

*Stearns v. Ticketmaster Corp.,*
    655 F.3d 1013 (9th Cir. 2011) ...................................................................... 12

*Vinh Nguyen v. Radient Pharm. Corp.,*
    287 F.R.D. 563 (C.D. Cal. 2012) .................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes,*
    __ U.S. __, 131 S. Ct. 2541 (2011) ................................................................ 5

*West v. Circle K Stores, Inc.,*
    No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June
    12, 2006) ........................................................................................................ 14

*Wiener v. Dannon Co., Inc.,*
    255 F.R.D. 658 (C.D. Cal. 2009) .................................................................. 13

*Wolin v. Jaguar Land Rover North America , LLC,*
    617 F.3d 411 (9th Cir. 2010) .......................................................................... 7

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2013) ...................................................................... 12

*Zeisel v. Diamond Foods, Inc.,*
    No. C 10–01192 JSW, 2011 WL 2221113 (N.D. Cal. Jun. 7, 2011) .................. 2


**Statutes, Regulations, Rules & Miscellaneous**

Fed. R. Civ. P. 23(a) ................................................................................ 1, 2, 18

v

Fed. R. Civ. P. 23(a)(1) ................................................................................. 3-5

Fed. R. Civ. P. 23(a)(2) ................................................................................. 5-7

Fed. R. Civ. P. 23(a)(3) ................................................................................. 7-8

Fed. R. Civ. P. 23(a)(4) ................................................................................. 8-9

Fed. R. Civ. P. 23(b)(3) ........................................................................ 1, 2, 9-13

Fed. R. Civ. P. 23(b)(3)(A) ........................................................................ 13-14

Fed. R. Civ. P. 23(b)(3)(B) ............................................................................. 14

Fed. R. Civ. P. 23(b)(3)(C) ............................................................................. 14

Fed. R. Civ. P. 23(b)(3)(D) ............................................................................. 15

Fed. R. Civ. P. 23(g) ....................................................................................... 9

Fed. R. Civ. P. 23(g)(1) .................................................................................. 3

Newberg on Class Actions § 7:32 (5th ed.) ...................................................... 18

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Alessandra Balser and Ruth Kresha (collectively, "Plaintiffs") respectfully submit this memorandum of points and authorities in support of their Motion for Class Certification (the "Motion").

### I. Introduction

Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek class certification of a class of purchasers of certain "Alba Botanica" brand cosmetic products (the "Products") that are falsely labeled as "natural." As more particularly described in Plaintiffs' First Amended Class Action Complaint (the "Complaint"), the representation that the Products are "natural" is false and misleading to a reasonable consumer because the Products contain synthetic ingredients, such as benzyl benzoate (a solvent and preservative associated with allergies and contact dermatitis), retinyl palmitate (a synthetic skin conditioning agent that produces toxic free radicals that can damage DNA and cause gene mutations when exposed to UV light) and amodinethicone (a synthetic silicon-based polymer). Complaint, ¶17. Plaintiffs and Class Members were damaged by these misrepresentations because Defendant charged and they paid a premium for the Products because they were labeled "natural." The Products were manufactured, marketed and sold by Defendant Hain Celestial ("Defendant" or "Hain Celestial").[1]

Plaintiffs respectfully request that the Court certify the following class (the "Class")[2]:

---

[1] The "Alba Botanica" Products at issue in this lawsuit are certain products sold under the "Very Emollient" and "Hawaiian" product lines, identified in paragraph 1 of the Complaint.
[2] The proposed Class that is the subject of this Motion differs from the classes alleged in the Complaint. Plaintiffs have elected not to move to certify the classes alleged in the Complaint.

1

All purchasers of the Products in the States of Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Maine, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, Rhode Island, Vermont, Washington, Wisconsin, and the District of Columbia, and all purchasers of the Products in the State of Alaska from August 2, 2011 to the present, who purchased the Products primarily for personal, family or household purposes. Specifically excluded from this Class are: the Defendant, the officers, directors and employees of Defendant; any entity in which Defendant has a controlling interest; any affiliate, legal representative of Defendant; the judge to whom this case is assigned any member of the judge's immediate family; and any heirs, assigns and successors of any of the above persons or organizations in their capacity as such.[3]

Class certification should be granted because the proposed Class satisfies the "numerosity," "typicality," "commonality" and "adequacy" requirements of Rule 23(a)(1)-(4), as well as the "predominance" and "superiority" elements of Rule 23(b)(3). Each Class Member's claims arise from Defendant's uniform course of conduct, and the factual disputes are common and can be proven on a class-wide basis. And, Plaintiffs have retained counsel that are experienced in class action litigation and will vigorously prosecute this litigation. Accordingly, Plaintiffs have met all of the requirements of Rule 23(a) and 23(b)(3).

Courts routinely certify classes of purchasers of mislabeled consumer products. *See, e.g.*, *In re POM Wonderful*, No. ML 10–02199 DDP (RZx), 2012 WL 4490860, *1 (C.D. Cal. Sept. 28, 2012); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 559 (S.D. Cal., 2012); *In re Ferrero*, 278 F.R.D. 552, 556 (S.D. Cal. 2011); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D. Cal. 2011); *Zeisel v. Diamond Foods, Inc.*, No. C 10–01192 JSW, 2011 WL 2221113, *1 (N.D. Cal. Jun. 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 369 (N.D. Cal.

[3] In the alternative, Plaintiffs seek certification of classes of purchasers from the states of California, Washington, New Hampshire and any additional states which the Court determines to have sufficiently similar law to any of these three states for them to be included without creating manageability issues. Plaintiff will conform the operative complaint to include whichever class, classes, or subclasses the Court certifies.

2

2010). Consumer protection claims are particularly appropriate for class treatment since individual damages tend to be small and the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 689 (1997); *see also Lane v. Facebook, Inc.,* 696 F.3d 811, 829 (9th Cir. 2012), *cert. denied,* No. 13-136, 2013 WL 5878083 (U.S. Nov. 4, 2013) (quoting *Amchem*); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action").

For these reasons, and the reasons set forth below, Plaintiffs respectfully request that this Court certify the proposed Class, appoint Plaintiffs as Class representatives and appoint Plaintiffs' counsel as Counsel for the Class pursuant to Rule 23(g)(1).[4]

## II.    Plaintiffs Have Satisfied Rule 23(a)

### A. The Class is Sufficiently Numerous

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility"; rather, the inquiry focuses on the difficulty or inconvenience of joining all members of class.  *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–914 (9th Cir. 1964); *accord, Katz v. China Century Dragon Media, Inc.,* 287 F.R.D. 575,

---

[4]  Although Plaintiffs moved to commence discovery immediately, the earliest available hearing date for the motion was November 18, 2013 [Dkt. No. 23], and the date was moved by the Court to December 2, 2013 [Dkt. No. 29]. Accordingly, Plaintiffs have had no discovery on class certification issues. If facts become available through the discovery process that are relevant to this Motion, Plaintiffs will supplement the record.

3

583 (C.D. Cal. 2012). "In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it." *Beck-Ellman v. Katz USA, Inc.,* 283 F.R.D. 558, 564 (S.D. Cal. 2012) (citing *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n. 5 (9th Cir. 1977)).

      Numerosity is easily satisfied with respect to the Class. Although the exact sizes are not yet known, joinder of the claims of all Class Members would be impracticable. The Products have been sold in thousands of stores to thousands of persons. Complaint, ¶23. In the states of residence of just the Plaintiffs alone, the "Natural Very Emollient Lotion" in "Unscented Original" Product is sold at two hundred and eighteen (218) stores in California within 100 miles of Santa Monica, California (zip code 90406), seventy-eight (78) stores within Washington within 100 miles of Seattle, Washington (zip code 98101), and twenty-six (26) stores in New Hampshire within 100 miles of Hanover, New Hampshire (zip code 03755). Additionally, "Natural Very Emollient Bath & Shower Gel" in "Lavender" is sold in thirty-six (36) stores within the State of New Hampshire, within 100 miles of Hanover, New Hampshire. *See* Veno Decl. at ¶ 2. These facts amply demonstrate that the size of the Class is sufficiently numerous that it would be impractical to join all of their claims in one lawsuit.[5] *See, e.g., In re China Intelligent Lighting & Electronics, Inc. Sec. Litig.,* CV 11-2768 PSG SSX, 2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ("courts have generally presumed numerosity when there are at least forty members in the proposed class."); *Charlebois v. Angels Baseball, LP*, SACV 10-0853 DOC ANX, 2011 WL 2610122 (C.D. Cal. June 30, 2011) (same); *Dennis v. Kellogg Co.,* 09-CV-1786-IEG WMC, 2013 WL 1883071 (S.D. Cal. May 3, 2013) (inferring numerosity from nationwide product sales); *Shields v. Walt Disney Parks & Resorts US, Inc.,* 279 F.R.D. 529, 548 (C.D. Cal. 2011)

---

[5] Thus, even if the Court were only to certify a class in the three states where Plaintiffs purchased the Products, numerosity would be more than satisfied.

4

1    (inferring numerosity from "[a]t least seven visitor complaints and 18 comments
2    from visually impaired testers").

3                **B. There are Common Questions of Law or Fact**

4           Rule 23(a)(2) (known as "commonality") is satisfied because the litigation
5    raises numerous questions of law or fact that are common to the class, while
6    "commonality only requires a single significant question of law or fact." *Mazza v.*
7    *Am. Honda Motor Co.*, Inc., 666 F.3d 581, 589 (9th Cir. 2012) (citation omitted).
8    To satisfy Rule 23(a)(2), "the claims must depend on a common contention," and
9    "[t]hat common contention . . . . must be of such a nature that it is capable of
10   classwide resolution – which means that determination of its truth or falsity will
11   resolve an issue that is central to the validity of each one of the claims in one
12   stroke." *Wal-Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S. Ct. 2541, 2546 (2011).
13   "'[C]onfronted with a class of purchasers allegedly defrauded over a period of time
14   by similar misrepresentations, courts have taken the common sense approach that
15   the class is united by a common interest in determining whether a defendant's
16   course of conduct is in its broad outlines actionable, which is not defeated by slight
17   differences in class members' positions, and that the issue may profitably be tried
18   in one suit.'" *Vinh Nguyen v. Radient Pharm. Corp.,* 287 F.R.D. 563, 569 (C.D.
19   Cal. 2012) (quoting *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975)). Courts
20   routinely find "commonality" satisfied in cases involving consumer protection
21   claims arising from mislabeling of consumer goods. *See, e.g., Johnson v. General*
22   *Mills,* 275 F.R.D. 282, 287 (C.D. Cal. 2011); *Chavez v. Blue Sky Natural*
23   *Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal. 2010); *In re POM Wonderful LLC,*
24   2012 WL 4490860, at *1. "[V]ariation among class members in their motivation
25   for purchasing the product, the factual circumstances behind their purchase, or the
26   price that they paid does not defeat the relatively 'minimal' showing required to

27

28                                          5

1  establish commonality." *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523,
2  537 (N.D. Cal. 2012).

3      Rule 23(a)(2) is easily satisfied since there are numerous issues of law and
4  fact common to the class, including: (1) whether the term "natural" constitutes a
5  representation to a reasonable consumer that the products do not contain unnatural
6  synthetic ingredients; (2) whether the representation was material to a reasonable
7  consumer; (3) whether the Products contain synthetic ingredients; and (4) the
8  proper method for calculating damages.  The existence of these common questions
9  are clearly sufficient under Rule 23(a)(2).

10      In particular, all Class Members were exposed to identical representations
11 because Defendant used materially identical labels on each Product that uniformly
12 bear the term "natural." *See* Veno Decl., ¶ 5.   Similarly, each of these
13 representations was misleading in the same manner because each of the Products
14 contained synthetic ingredients. *See* Veno Decl., ¶ 6 and Exh. B. And, Plaintiffs
15 have submitted expert evidence demonstrating that the "natural" representations
16 are material to a reasonable consumer. *See* Declaration of  Professor Elizabeth
17 Howlett ("Howlett Decl."), submitted herewith.  Finally, the same damages model
18 applies to all class members – the "premium" paid for the Products (the difference
19 between the price paid for the Products and the price that would have been paid if
20 the Products were not labeled as "natural") can be uniformly established, for
21 example, by comparing the retail prices of the Products and comparable products
22 not labeled "natural."  *See* Complaint, ¶ 18.

23      Plaintiffs' legal claims are also common to all Class members because
24 Plaintiffs move to certify *only* claims under materially identical state laws.  All of
25 these state consumer protection laws (i) prohibit false and misleading
26 representations, (ii) do not require a showing of Defendant's intent to deceive, (iii)
27 do not require a showing of actual reliance by unnamed class members and (iv)
28

6

provide for a consumer's private right of action to recover damages. *See infra* Section III(B)(4); *see also* Veno Decl., Exh. D.

**C.    Plaintiffs' Claims are Typical of the Claims or Defenses of the Class**

Plaintiffs have also satisfied Rule 23(a)(3), which requires the representative party to have claims that are "typical of the claims or defenses of the class." Rule 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (citations omitted). The typicality requirement is "permissive and requires only that the representative's claims are reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether the other class members have been injured by the same course of conduct.'" *Wolin v. Jaguar Land Rover North America , LLC,* 617 F.3d 411 (9th Cir. 2010) *citing Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "In determining whether typicality is met, the focus should be 'on defendant['s] conduct and the plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.,* 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citing *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). The "typicality" requirement is satisfied even if the plaintiffs may have considered other factors in their purchasing decisions. *See Bruno,* 280 F.R.D. 524, 534 (C.D. Cal. 2011).

Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs, like all Class Members, were exposed to the same misrepresentations by

7

Defendant because each of the Plaintiffs purchased one of the Products with a Product label that falsely represented that the Product was "natural." Complaint, ¶¶ 7-8. Moreover, Plaintiffs, like all Class Members, purchased Products that, contrary to Defendant's misrepresentations, contained synthetic ingredients. *Id.* at ¶17. And, like all Class Members, Plaintiffs were damaged by Defendant's conduct because they paid a premium for the Products. *Id.* at ¶¶ 7-8, 18. Accordingly, Plaintiffs' claims are typical of the proposed Classes within the meaning of Rule 23(a)(3).[6]

### D.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs will "fairly and adequately protect the interests of the class" under Rule 23(a)(4). The adequacy inquiry focuses solely on whether the representative

---

[6] Plaintiffs assert claims on behalf of purchasers of Products they purchased, as well as additional varieties of body wash, lotion, and hair care Products in the Hawaiian and Very Emollient product lines with labels that contain the same "natural" misrepresentation. A plaintiff who purchases a product within the same product line bearing an identical misrepresentation is "sufficiently similar" to, and can represent, all other class members who purchased products within that product line. *See, e.g. Beck-Ellman*, 283 F.R.D. at 566 (certifying claims on behalf of all models in "heating pad" product line where all "heating pads contain similar omission[s]"); *Chavez*, 268 F.R.D. at 378 ("Although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'") (citation omitted); *Astiana v. Dreyer's Grand Ice Cream, Inc.,* C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (Plaintiffs had standing to represent purchasers of similar varieties of ice cream not purchased by named plaintiffs); *Anderson v. Jamba Juice,* 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (plaintiff could bring claims on behalf of purchasers of smoothie kit flavors he did not buy because there was sufficient similarity between the products he purchased and the products not purchased); *Colucci v. ZonePerfect Nutrition Co.,* No. 12-2907-SC, 2012 WL 6737800, at *4-5 (N.D. Cal. Dec. 28, 2012) (plaintiff could bring claims on behalf of purchasers of flavors of protein bars she did not purchase because the bars were sufficiently similar and bore the same challenged label).

8

plaintiffs and their counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) citing *Hanlon,* 150 F.3d at 1020.   As discussed above, Plaintiffs and the members of the Class assert materially similar legal claims and their damages arise out of the same course of conduct by Defendant. Accordingly, there is no conflict of interest between Plaintiffs' claims and the claims of Class members.

Moreover, Plaintiffs have shown that they will vigorously prosecute this litigation on behalf of the Class because they have retained attorneys with significant class action experience. *See Johnson,* 275 F.R.D. at 288 (adequacy requirement satisfied where neither plaintiff nor plaintiff's counsel had any conflicts of interests with proposed class members and plaintiff's counsel had significant class action experience).  Plaintiffs' counsel have significant experience in complex class action  litigation. *See* Veno Decl., Exh. C.  Moreover, Plaintiffs' counsel have already demonstrated their willingness to vigorously prosecute this litigation through their investigation of the claims in this action, their drafting of the Complaint and First Amended Complaint, their opposition to Defendant's Motion to Dismiss, their efforts to accelerate necessary discovery, their retention of an expert to address important elements of Plaintiffs' claims and the filing of this Motion for Class Certification. For these reasons, the adequacy requirement is satisfied.[7]

### III.    Plaintiffs Have Satisfied Rule 23(b)(3)

Plaintiffs have also satisfied the requirements of Rule 23(b)(3). First, common questions of law or fact predominate over any purported individual questions.  Second, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[7] For these same reasons, Rule 23(g) has been satisfied.

9

## A.  Common Questions Of Law Or Fact Predominate

Rule 23(b)(3) is satisfied because the common questions of law or fact discussed above predominate over any individual questions. The "predominance" standard under Rule 23(b)(3) is met where the common questions relate to a significant portion of the case and where the questions involving defendant's liability can be determined by evidence that is common to the class. *Mazza,* 666 F.3d at 589 (citing *Hanlon,* 150 F.3d at 1022)**.**  The express language of Rule 23(b)(3) does not require that common questions be exclusive; it only requires that they predominate.  As the Supreme Court has observed, the predominance test is "readily met" in consumer fraud cases.  *Amchem,* 521 U.S. at 623.

As discussed in Section II(B), above, there are many common issues of fact or law in this case. These common issues establish Defendant's liability under the law, and thus they clearly predominate over any purported individual questions within the meaning of Rule 23(b)(3).  As a factual matter, as to each Class Member, Plaintiffs can establish through common evidence:

1)  Defendant represented that the Products were "natural";

2)  The "natural" representation was false because the Products contained synthetic ingredients;

3)  The false "natural" representation was misleading to a reasonable consumer;

4)  The false "natural" representation was "material"; and

5)  Class members suffered an ascertainable loss, the amount of which is calculated pursuant to a common methodology.

First, all Class Members were exposed to the exact same misleading representation, as each of the Products purchased by Class Members used the same misleading language ("natural") on the label.  Veno Decl., ¶¶ 3 and 5 and Exh. A. Therefore, there is absolute commonality on Defendant's representation.

10

Second, each of the Products contained synthetic (*i.e.,* "unnatural") ingredients. Veno Decl., ¶ 6 and Exh. B.  Accordingly, there are simply no individual issues for the jury to consider to determine whether the "natural" representation was false or misleading.

Third, under the consumer protection laws applicable to each Class Member claim, liability is based on the objective test of whether the Defendant's "natural" representations would be misleading to a "reasonable consumer." Veno Decl., Exh. D. Therefore, Defendant's liability does not turn on whether each Class member was actually misled.  Consequently, this is a question that can be resolved through fact and expert evidence common to the Class.

Fourth, the materiality of the "natural" representation will be proven on a class-wide basis through evidence from Defendant and experts.[8]  Again, there are no individual issues.

Fifth, common issues will predominate in proving and calculating the "premium" attributable to Defendant's false representation that the Products are "natural," and, therefore, each Class members' ascertainable loss and damages. As discussed above, there is a "premium" associated with the price of Products that are "natural" – in other words, people pay more for Products labeled "natural" than for Products that are not so labeled (Complaint, ¶ 18) – which could be established by, for example, the difference in the prices of the Products and comparable products that are not represented to be "natural."   Because the evidence of "premium" will consist of expert testimony and common evidence of the prices of the Products and comparable products, there will be no individual issues for a jury to resolve in order to calculate the "premium."  As a result, these are not questions

---

[8]  *See* Howlett Declaration.

11

"affecting only individual members" (Rule 23(b)(3)), and the common questions with respect to the "premium," loss and damages predominate.[9]

Critically, the jury will not have to consider the arguably individual issue of whether individual Class Members "relied" upon the misleading representations. None of the statutes at issue require proof of actual reliance by individual class members. *See infra* Section III(B)(4) and Veno Decl., Exh. C.[10] Similarly, the jury will not have to consider whether Defendant intended to mislead individual Class Members as none of the statutes require proof of such intent. *Id.* Accordingly, the reliance of individual Class members is completely irrelevant, and individual issues will not predominate over the resolution of these common questions.

**B.    A Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) also provides that the Court determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) provides the following nonexclusive factors to guide the Court in determining "superiority":

> the interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already

---

[9] Even where individual issues play a role in the calculation of damages, it is well-settled that this does not defeat predominance or require denial of class certification. *See, e.g., Yokoyama v. Midland Nat'l Life Ins. Co.* 594 F.3d 1087, 1094 (9th Cir. 2013) ("The amount of damages is invariably an individual question and does not defeat class action treatment") (quoting *Blackie,* 524 F.2d at 905); *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) (same).

[10] The Ninth Circuit has held that, under the CLRA, class-wide "reliance" and causation is presumed where, as here, the misrepresentations at issue are "material" to a reasonable person. *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1022-23 (9th Cir. 2011); *see Beck-Ellman*, 283 F.R.D. at 568; *Johns,* 280 F.R.D. at 558. Plaintiffs have submitted expert testimony demonstrating that Defendant's "natural" representations were material to consumers. *See Howlett Decl.,* ¶¶ 13, 22-30, 48.

12

> commenced by… member of the class; (C) the desirability . . .
> of concentrating the litigation of the claims in the particular
> forum; and (D) the difficulties likely to be encountered in the
> management of a class action.

It is well established that where individual monetary claims are small, class action litigation is the superior form of adjudication. *See, e.g. Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 672 (C.D. Cal. 2009) (where individual claims are small "there is no realistic alternative to a class action  . . . making a class action undoubtedly the superior method of adjudication"). "[C]lass actions "to enforce compliance with consumer protection laws are desirable and should be encouraged." *Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 468, 484 (C.D. Cal. 2012), *on reconsideration*, CV 11-1067 CAS JCX, 2012 WL 2458118 (C.D. Cal. June 25, 2012) (citing *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 600 (E.D. Cal. 1999) (internal citation omitted).

Consideration of the factors enumerated in Rule 23(b)(3)(A)-(D) confirm that a class action is the superior method for the fair and efficient adjudication of this case.

### 1.    Rule 23(b)(3)(A)

In a case with thousands of claimants, a class member's interest in having the claims of the class aggregated in a single class action lawsuit substantially outweighs the interest of a class member in individual control of the litigation. Where, as here, the damages suffered by each class member are not large, the application of Rule 23(b)(3)(A) weighs in favor of class certification. *Barbosa v. Cargill Meat Solutions Corp.,* 1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. July 2, 2013) ("[W]here monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored.")  (citation omitted); *see also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield

13

substantial economies in litigation"). As the Supreme Court has observed, class actions permit plaintiffs to pool claims which would be uneconomical to litigate individually, and "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see Carnegie*, 376 F.3d at 661 ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or fanatic sues for $30"). In a consumer class action where thousands of persons are damaged by false representations, few if any class members would have the resources to prosecute the claims individually. However, when consumers' claims are aggregated in a class action, even a consumer who spent a few dollars has the opportunity to recover for the defendant's wrongdoing. This benefit of the class action mechanism is compelling, and clearly outweighs any speculative interest of each class member in controlling the prosecution of separate actions.

### 2.      Rule 23(b)(3)(B)

Plaintiffs' Counsel are not aware of any pending litigation in which the claims at issue in this case are being separately pursued by any class members. *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *8 (E.D. Cal. June 12, 2006) ("In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action . . . ."). As a result, the second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) also supports the conclusion that a class action is the superior method for the resolution of the claims in the Complaint.

### 3.      Rule 23(b)(3)(C)

Consideration of the third factor (the desirability of concentrating the litigation of the claims in the particular forum) further demonstrates that a class action is superior. Although Defendant previously filed a motion to dismiss, it

14

made no claim that the case should have been brought in a more convenient forum. As a result, this forum is the most efficient forum to litigate the claims alleged in the Complaint.

### 4.   Rule 23(b)(3)(D)

An analysis of the fourth factor (the difficulties that are likely to be encountered in the management of a class action) confirms the superiority of having the claims of the Classes resolved in a class action.

As discussed above, the five key factual issues in this case can be resolved on a class-wide basis. Indeed, there are *no* material factual issues that cannot be considered across all proposed classes. Therefore, from a manageability/superiority/trial planning standpoint, there is no reason to question class certification. Moreover, since there are no material differences among the laws of the states covered by the proposed Classes, Plaintiffs have satisfied this element of Rule 23.

The Court will not encounter any difficulties in the management of the proposed Class, which consists of persons who purchased the Products in the states of Alaska, Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Maine, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, Rhode Island, Vermont, Washington, Wisconsin, and the District of Columbia.[11] As shown in Veno Decl. at Exhibit D, the consumer protection statutes in these states are materially similar because they all (i) prohibit false and misleading representations, (ii) do not require a showing of intent to deceive, (iii) do not require a showing of actual reliance by unnamed class members, and (iv) provide for a consumer's private right of action to recover damages**.** Since there are ***no*** material differences between the state laws at issue,

---

[11] This is a slightly smaller class than that set forth in the Complaint.  Plaintiffs will amend the Complaint to conform to the Court's Class Certification determination.

15

the Court will not encounter difficulties in the management of the litigation under Rule 23(b)(3)(D) and the Class should be certified.[12] *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litig.,* 230 F.R.D. 61 (D. Mass. 2005) (certifying class under vast majority of nationwide consumer protection statutes); *Keegan v. American Honda Motor Co., Inc.,* 284 F.R.D. 504 (C.D. Cal. 2012) (California, Florida and New York consumer protection statutes sufficiently similar, except for statute of limitations provisions which, as discussed below, are not relevant here).

Moreover, any slight variations among the states are easily manageable at trial. For example, while all of the states provide that consumers are entitled to recover their actual damages, a subset of those states provide remedies that permit their consumers to recover *additional* damages (such as minimum, double or treble damages). As shown in Plaintiffs' Trial Plan, below, these limited variations can easily be managed at trial.

---

[12] *Mazza,* 666 F.3d at 990 ("The fact that two or more states are involved does not itself indicate that there is a conflict of law problem. A problem only arises if differences in state law are material, that is, if they make a difference in this litigation") (internal citations omitted); *Hanlon*, 150 F.3d at 1022-23 ("idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims"); *In re Abbott Laboratories Norvir Anti-Trust Litig.,* No. 04-cv-4203, 2007 WL 1689899 (N.D. Cal. June 11, 2007) (certifying class under the unjust enrichment laws of 48 states; slight variations between state laws do not preclude class certification where these differences "do not significantly alter the central issue or the manner of proof"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Marketing Litig.,* 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying nationwide class where there were only minor variations between state laws); *In re Pharmaceutical Industry Average Wholesale Price Litig.,* 233 F.R.D. 229 (D. Mass. 2006) (certifying class under the consumer protection laws of 41 states); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 615 (N.D. Cal. 2009) (noting that "courts frequently certify classes under the laws of multiple jurisdictions").

16

Similarly, any variations in statutes of limitations are also immaterial and easily manageable at trial. None of the Products were labeled "natural" prior to December of 2010 (Veno Decl., at ¶ 4).  Since this case was filed on August 2, 2013, the operative misrepresentations all occurred within the statute of limitations period for *all* of the States in the proposed Class except Alaska (which has a two-year statute).

### 5.   Plaintiffs' Trial Plan

Plaintiffs' Trial Plan is simple. As described above, the five factual issues that need to be resolved concerning all Class Members are identical. The legal standards to be applied in resolving the factual issues are likewise identical across all Class members. Therefore, the jury needs to make only one set of factual decisions across all Class Members.

The only possible differences among state laws that could affect manageability concern damages, and these differences can easily be managed. All states in which Class Members reside provide for actual damages, the measure and calculation of which will be identical under the facts of this case. Since both the liability and actual damages calculation issues are materially identical across all Class members, certification under (b)(3) is proper.

In addition to actual damages, Alaska, Hawaii, New York and the District of Columbia provide for a statutory minimum damage amount. This amount would automatically apply in the event that actual damages are below the statutory minimum. Application of the minimum is a simple mathematical calculation that could be applied in the individual Class Member damages portion of the case. Performing this calculation should not affect manageability. And, to the extent that it would be helpful, a Subclass of states with statutory minimum damages could easily be created.

17

1    In the same vein, two states (New Jersey and the District of Columbia,)

2    provide for an automatic multiple of actual damages in the form of double or triple

3    damages. Application of the multiples is again a simple mathematical calculation

4    that could be applied in the individual Class member damages portion of the case

5    and should not affect manageability. And, to the extent that it would be helpful, a

6    Sub-Class of states with damages multipliers could easily be created.[13]

7        All of the claims alleged in the Complaint will be governed by materially

8    similar consumer fraud laws. As there is no reason to believe that the prosecution

9    of the claims of Class Members in a single class action will create *more*

10   management problems than the alternative (*i.e.,* the prosecution of thousands of

11   separate lawsuits by each class member), class adjudication is clearly superior to

12   any other form of adjudication. Indeed, denial of class certification in clearly

13

14   [13] In addition to actual damages, California (where Plaintiff Kresha resides), and

15   Arkansas, Connecticut, Delaware, Illinois, Massachusetts, Missouri, New
     Hampshire, Rhode Island, Vermont, Washington, Arkansas, Hawaii, New York

16   and the District of Columbia permit additional damages upon a showing of
     wrongful conduct by a defendant. While the courts have used slightly different

17   terms to describe the standards for obtaining the additional relief, in the main it

18   revolves around a showing of particularly egregious, willful conduct. Therefore,
     there are no material differences among these states. To the extent any non-

19   material differences between the state statutes may exist, this court can and should

20   easily create subclasses for management of these differences. *See American Timber*

21   *& Trading Co. v. First Nat. Bank of Oregon,*  690 F.2d 781, 787-789 (9th Cir.
     1982) (affirming lower court's creation of a subclass to manage a factual issue

22   unique to some class members). Case management subclasses are authorized by

23   Rule 23(d) and  "are appropriate when 'there is no actual conflict among class
     members in the underlying claims common to the entire class' and the subclass is

24   'created solely to expedite resolution of the case by segregating [a distinct legal]

25   issue [that is] common to some members of the existing [class].'"  Newberg on
     Class Actions § 7:32 (5th ed.) *citing Cesale v. Kelly,* 257 F.R.D. 396, 408-09

26   (S.D.N.Y. 2009). Case management subclasses need not independently satisfy the

27   commonality, numerosity, typicality and adequacy requirements of 23(a).
     *American Timber & Trading Co.,* 690 F.2d at 787 n.5.

28                                              18

appropriate cases like this one on "superiority" grounds would effectively render consumer protection laws meaningless. As a result, a class action is not only the superior, but perhaps the only, way to litigate the claims alleged in this action. *See, e.g., In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 148 (C.D. Cal. 2007) (failure to certify due to unmanageability is disfavored).[14]

## IV.   Conclusion

For the reasons stated herein, Plaintiffs respectfully request the Court certify the classes described herein, appoint them as class representatives, and appoint Lead and Liaison Class Counsel as indicated in the proposed order.

Dated:  November 20, 2013          Respectfully submitted,

By: */s/ Elizabeth P. Lin*
Elizabeth P. Lin (State Bar No. 174663)
**THE LIN LAW FIRM, APLC**
2705 S. Diamond Bar Blvd., Suite 398
Diamond Bar, CA 91765
Telephone: (909) 595-5522
Facsimile: (909) 595-5519
elizabethl@thelinlawfirm.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (admitted *pro hac vice*)
Jeffrey S. Nobel (admitted *pro hac vice*)
Nicole A. Veno (admitted *pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

---

[14] To the extent the Court believes that subclasses may allow for the more efficient management of the action, or that class members from certain states should be excluded from the Class due to a lack of similarity among state laws, Plaintiffs respectfully move to amend the Motion to accommodate the Court's concerns.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Plaintiffs ALESSANDRA BALSER and RUTH KRESHA, Individually and on Behalf of All Others similarly Situated

20